**Daniel J. SHARKEY, Plaintiff,**

v.

**LASMO (AUL LTD.) and Ultramar Corporation, Defendants.**

**No. 94 Civ. 4699(WCC).**

United States District Court,
S.D. New York.

Dec. 8, 1995.

 

of counsel), for defendant Ultramar Corporation.

WILLIAM C. CONNER, Senior District Judge:

Plaintiff Daniel Sharkey brings this action pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* Plaintiff, a Vice President and manager for Ultramar Energy Limited ("UEL") during times relevant in this case, alleges that, due to his age, he was denied a comparable position in the new company created out of a corporate merger and reorganization involving UEL, and was ultimately terminated. Defendant Ultramar Corporation ("Ultramar"), the successor to UEL after the reorganization, has moved to dismiss for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), or, in the alternative, for summary judgment dismissing the complaint, Fed.R.Civ.P. 56. Defendant Lasmo (AUL Ltd.) ("Lasmo"), has filed a memorandum in support of defendant Ultramar's motion, and has reserved the right to make a similar motion following resolution of the instant motion. This motion was referred to the Honorable Lisa Margaret Smith, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B). On June 27, 1995, Magistrate Judge Smith filed a Report and Recommendation (the "Report") in which she recommends that the motion be denied. This case is presently before the court on objections to the Report filed by defendant Ultramar pursuant to 28 U.S.C. § 636(b)(1).[1] For the reasons discussed below, we accept Magistrate Judge Smith's recommendation and deny defendant Ultramar's motion to dismiss or for summary judgment.

## BACKGROUND

In 1992, plaintiff was employed by UEL as Vice President of Refinery Coordination and Products Trading. UEL was an affiliate of defendant Lasmo, which was known at the

Silver Golub & Teitell, Stamford, Connecticut (David S. Golub, of counsel), for plaintiff.

Fulbright & Jaworski, LLP., New York City (Ralph C. Dawson, of counsel), for defendant Lasmo (AUL Ltd.).

Williams and Zevnik, P.C., New York City (Daniel H. Williams III, Ivonne M. Cabrera,

---

1. Defendant Lasmo disputed by letter memorandum two factual findings in the Report. Lasmo's objections are immaterial to the Report's conclusions and have no bearing upon the present motion.

time as American Ultramar Limited.[2] Both UEL and American Ultramar Limited were corporate subsidiaries of Ultramar p.l.c., a public limited company organized under the laws of the United Kingdom. In late 1991 or early 1992, Lasmo p.l.c., an oil and gas exploration company also organized under the laws of the United Kingdom, acquired Ultramar p.l.c. and Ultramar p.l.c.'s corporate subsidiaries in a hostile takeover. In 1992, Lasmo p.l.c. planned to consolidate various Ultramar p.l.c. business activities into a new corporation, namely, defendant Ultramar.[3] UEL was to have its function assumed by the new corporation. Plaintiff alleges that some time in early 1992, Lasmo p.l.c. directed defendant Lasmo's management to hire executive staff for the new corporation.

In 1992, Patrick Guarino, General Counsel of both defendant Lasmo and defendant Ultramar, offered executive positions with defendant Ultramar to plaintiff, who was then 59 years old, and two other Vice Presidents of UEL, Patrick McAward, who was then 35, and Michael Kuzmin, who was then 42. The positions required relocation to Canada. The two younger UEL Vice Presidents, McAward and Kuzmin, were offered substantially more favorable employment packages than plaintiff was offered, including (1) a sign-on bonus equivalent to one half year's salary in the form of restricted stock in defendant Ultramar; (2) stock options in defendant Ultramar; (3) a relocation allowance of up to $15,000; and (4) an "evergreen" agreement providing for automatic extension of the term of employment so that it would never be less than two years, and two years severance pay upon separation. Plaintiff alleges that defendants did not offer plaintiff these incentives because defendants did not want to be bound to plaintiff, who was then 59 years old, for more than two years. Plaintiff also alleges that defendants did not believe that plaintiff, because of his age, would risk rejecting the offer defendants had made to him.

In June 1992, plaintiff met with Patrick Guarino, General Counsel of both defendant Lasmo and defendant Ultramar, and advised him that he would accept the offer of employment with defendant Ultramar if he was given the same package as the other two Vice Presidents. Guarino refused to match their packages. In July 1992, the public offering of defendant Ultramar's stock was completed, and plaintiff's employment with UEL was terminated on July 31, 1992.

In April 1993, plaintiff filed an age discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). At the time he filed the charge, plaintiff claims that he did not know that defendant Ultramar had been formed prior to its July 1992 public stock offering. Plaintiff maintains that when he filed his EEOC complaint, he was not represented by an attorney, and that he did not consult an attorney about the EEOC complaint until well after it had been filed. Although plaintiff's statement in support of his EEOC charge identified defendant Ultramar as plaintiff's prospective employer, it listed only defendant Lasmo as a respondent.

Defendant Ultramar has moved to dismiss for failure to state a cause of action or, in the alternative, for summary judgment. Defendant Ultramar asserts that dismissal is appropriate because (1) plaintiff did not sufficiently allege conduct by defendant Ultramar; (2) plaintiff did not name defendant Ultramar in his EEOC complaint, which is a prerequisite to filing this federal action against defendant Ultramar; (3) defendant Ultramar was not an "employer" within the meaning of the ADEA; and (4) plaintiff was not employed by or offered employment with defendant Ultramar, nor did he seek such employment.

## SUMMARY JUDGMENT

▇▇▇ Defendant Ultramar filed its motion as a motion to dismiss or, in the alterna-

---

**2.** Defendant Lasmo is a corporation organized pursuant to the laws of the State of New York. At the times of the events in issue, defendant Lasmo, under the names of American Ultramar Limited and Lasmo (AUL Ltd.), had offices in Tarrytown, New York. Defendant Lasmo ultimately relocated its operation to Texas.

**3.** Defendant Ultramar is a corporation organized pursuant to the laws of the State of Delaware. Its principal place of business was, from its inception in April 1992, in Greenwich, Connecticut.

tive, for summary judgment. The court may convert a motion to dismiss into one for summary judgment after "all the parties [are] given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Goyette v. DCA Advertising Inc.*, 830 F.Supp. 737, 741 (S.D.N.Y.1993) (quoting *In re G. & A. Books, Inc.*, 770 F.2d 288, 295 (2d Cir.1985), *cert. denied sub nom. M.J.M. Exhibitors, Inc. v. Stern*, 475 U.S. 1015, 106 S.Ct. 1195, 89 L.Ed.2d 310 (1986)). All parties to this action have submitted memoranda, affidavits, and exhibits in support of their respective positions. Because these additional documents have been considered by this court and in the preparation of the Report, the motion is deemed to be one for summary judgment.

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. Fed. R.Civ.P. 56(c); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202 (2d Cir.1995); *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 36 (2d Cir.1994). The burden of showing that no genuine factual dispute exists rests on the party seeking summary judgment, and "the court is required to resolve all ambiguities and draw all factual inferences in favor of the party against whom summary judgment is sought[.]" *Cronin*, 46 F.3d at 202; *Chambers*, 43 F.3d at 36. The inferences to be drawn from the submitted materials, such as affidavits, exhibits, interrogatory answers and depositions, must be viewed in the light most favorable to the party opposing the motion. *Cronin*, 46 F.3d at 202; *Chambers*, 43 F.3d at 36.

## STANDARD OF REVIEW

 On review of proposed findings or recommendations on a motion for summary judgment, a district court must make a *de novo* determination of those portions of the report or proposed findings to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 72(b). After conducting its review, the court may then "accept, reject, or modify, in whole or in part, the findings or recom-

mendations made by the magistrate." 28 U.S.C. § 636(b)(1). The rule also permits the court to accept any portion of a magistrate's disposition to which no objection has been made as long as it is not "erroneous on the face of the record." Fed.R.Civ.P. 72, Notes of Advisory Committee on Rules (citing *Campbell v. United States Dist. Court*, 501 F.2d 196, 206 (9th Cir.), *cert. denied*, 419 U.S. 879, 95 S.Ct. 143, 42 L.Ed.2d 119 (1974)).

Defendant Ultramar has filed a written objection within the allotted time period, and we therefore review *de novo* the findings of the Report to which defendant objects. For the reasons stated below, we accept the recommendation of Magistrate Judge Smith, and deny Ultramar's motion to dismiss or for summary judgment.

## DISCUSSION

Defendant Ultramar raises four arguments in support of its motion for summary judgment dismissing the complaint: (1) plaintiff failed to allege any conduct by Ultramar; (2) plaintiff failed to file an administrative claim against Ultramar; (3) Ultramar was not an employer within the meaning of the ADEA; and (4) Ultramar is not the entity that offered to employ plaintiff.

The Report rejects the first argument because the complaint alleges that the discriminatory offer of employment with defendant Ultramar was made by management of defendant Lasmo, a reference to Guarino, then General Counsel of defendant Lasmo and defendant Ultramar. In addition, the submissions make clear that plaintiff will be able to produce evidence of defendant Ultramar's participation in, and responsibility for, allegedly discriminatory acts, thus giving rise to a genuine issue of material fact. The Report rejects Ultramar's second argument based on the identity-of-interest exception set forth in *Johnson v. Palma*, 931 F.2d 203 (2d Cir. 1991). The Report rejects Ultramar's third argument because Ultramar fell within the definition of an employer under the ADEA. Finally, the Report rejects Ultramar's fourth argument because a fact finder reasonably could conclude that Ultramar was the entity that offered to employ plaintiff. We find

none of these conclusions erroneous on the face of the record.

Defendant Ultramar objects only to Magistrate Judge Smith's application of the identity-of-interest exception excusing plaintiff's failure to name defendant Ultramar in the EEOC complaint. Therefore, we review *de novo* this portion of the Report. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

## I. The Identity-of-Interest Exception

■ Section 626(d) of Title 29 provides in pertinent part that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the EEOC." Exhaustion of federal administrative remedies is a jurisdictional prerequisite to commencing a law suit pursuant to the ADEA, and, as a general rule, a party who has not been named as a respondent in an EEOC charge may not subsequently be named as a defendant in a civil suit under the ADEA. *See, e.g., Johnson v. Palma,* 931 F.2d 203, 209 (2d Cir.1991) (prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant (citing 42 U.S.C. § 2000e–5(e))) [4]; *Goyette v. DCA Advertising Inc.,* 830 F.Supp. 737, 747 (S.D.N.Y.1993) (same).

■ However, "[b]ecause these charges generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional pleading requirements, [the Second Circuit has] taken a 'flexible stance in interpreting Title VII's procedural provisions,' ... so as not to frustrate Title VII's remedial goals." *Johnson v. Palma,* 931 F.2d at 209 (quoting *Egelston v. State University College at Geneseo,* 535 F.2d 752, 754, 755 (2d Cir.1976). This approach has recognized an exception to the general rule, referred to as the identity-of-interest exception. *Johnson v. Palma,* 931 F.2d at 209. The identity-of-interest exception permits a Title VII or ADEA action to proceed against an unnamed party where there is a "clear identity of interest between the unnamed defendant and the party named

in the administrative charge," *Johnson v. Palma,* 931 F.2d at 209.

■ As a threshold matter, this exception only applies where plaintiff is not represented by counsel. Defendant Ultramar maintains that plaintiff was represented by counsel at the time of the EEOC filing because plaintiff was represented by Mr. Golub, plaintiff's counsel in the present action, in a separate action unrelated to the EEOC complaint, *Sharkey v. Ultramar Energy Ltd.,* 867 F.Supp. 258 (S.D.N.Y.1994), which was filed in March 1993, and dismissed on summary judgment in November 1994. However, the transcript from the April 12, 1995 status conference before Magistrate Judge Smith clearly controverts Ultramar's position:

> THE COURT: I would also ask plaintiff's counsel what response you have ... with regard to the issue of whether or not Mr. Sharkey was represented by counsel when he filed his EEOC complaint?
>
> MR. GOLUB: ... Mr. Sharkey was not represented in filing the EEOC claim. I was representing him on the ERISA claim that was pending before Judge Broderick....
>
> He file [sic] this without my—I didn't represent him in the EEOC. I didn't go down to the EEOC. I didn't see the charge before the designation of Lasmo without Ultramar Corporation was made. He did that on his own.
>
> THE COURT: Did he consult you with regard to that?
>
> MR. GOLUB: In fairness, I knew he was going to be filing an age discrimination complaint but I was not representing him in the EEOC on that.
>
> THE COURT: Did you bill him for any consultation as related to the EEOC complaint?
>
> MR. GOLUB: Absolutely not.
>
> THE COURT: Did you review any of the documents?
>
> MR. GOLUB: I ultimately saw documents but I was not in a position to do anything about it at the time I saw it.

4. As concluded in the Report, the analysis is the same under Title VII or the ADEA. Ultramar

does not object to the application of Title VII case law to the case at hand.

THE COURT: Do you know if you saw it before or after he filed?

MR. GOLUB: I did not see the charge until after it was filed and the time frame for doing anything had passed by the time I saw it. And by the time frame, I mean the statutory time for giving notice.

. . . .

THE COURT: Prior to or at the time of his filing the EEOC charge, did you have any conversation· with him about who should be the subject of any such EEOC complaint?

MR. GOLUB: I had no conversation with him prior to the filing. No conversation about who the identity was.

THE COURT: At what time did you have such a conversation?

. . . .

MR. GOLUB: After the statutory period passed, I said—Why didn't you name Ultramar Corporation?

Status Conference Before the ˙Hon. Lisa Margaret Smith, p. 9–11 (April 12, 1995). We concur with Magistrate Judge Smith's conclusion that plaintiff was not represented by counsel in his EEOC complaint. Plaintiff fit the classic definition of a party "not versed in the vagaries of Title VII [or ADEA] procedural provisions." *Johnson*, 931 F.2d at 209. Plaintiff, therefore, passes the threshold requirement of the identity-of-interest exception.

## II. The Four–Prong Test

The test for determining whether an identity of interest exists between the unnamed defendant and the named party has four components: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of filing of the EEOC complaint; (2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way

represented to the complainant that its relationship with the complainant is to be through the named party. *Johnson v. Palma*, 931 F.2d at 209–10 (citing *Glus v. G.C. Murphy Co.*, 562 F.2d at 888). We conclude that Magistrate Judge Smith correctly applied the four-prong test of *Johnson* in determining that the facts of this case, viewed in the light most favorable to plaintiff, *Anderson v. Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), weigh in favor of granting plaintiff the benefit of the identity-of-interest exception.

### A. Whether the role of the unnamed party could be ascertained.

The first prong of the *Johnson* test is met because a fact finder could reasonably conclude that the role of defendant Ultramar by plaintiff could not be ascertained by reasonable efforts. At the time of the EEOC complaint (in April 1993), plaintiff avers that he did not know what role defendant Ultramar played in the allegedly discriminatory offer. A reasonable fact finder could conclude that, in April 1993, plaintiff did not know, or have reason to know, that Ultramar existed as a corporate entity during the time of the allegedly discriminatory acts. Plaintiff asserted that when Guarino, defendant Ultramar's General Counsel, met with plaintiff about employment with defendant Ultramar, the meeting was in Guarino's "AUL General Counsel Office." As stated in the Report, "The reasonable inference to be drawn from this fact is that even though Patrick Guarino was already employed as General Counsel for defendant Ultramar at the time of his conversations with plaintiff, he did not inform plaintiff of his relationship to defendant Ultramar, and plaintiff therefore reasonably believed that Mr. Guarino was employed solely by defendant Lasmo when the two met in June 1992." Report, p. 18–19.

Plaintiff alleges that at the time of the EEOC complaint, he knew defendant Ultramar to be only the prospective employer. According to plaintiff, he therefore believed he could not name defendant Ultramar as a respondent in the EEOC complaint. Plaintiff asserts that it was only after he observed certain documents obtained during the

course of this law suit that he learned for the first time that defendant Ultramar was legally formed in April 1992, prior to the time that the allegedly discriminatory acts were committed. While a reasonable effort in April 1993 would have revealed that defendant Ultramar was in existence as of July 1992 (due to its status as a public corporation listed on a major stock exchange), even a reasonable investigation by plaintiff in April 1993 may not have revealed that defendant Ultramar was incorporated in April 1992, prior to its July 1992 public offering and prior to the allegedly discriminatory acts, which occurred in June 1992.

Defendant Ultramar argues that "plaintiff admittedly *knew* that Ultramar was the entity that made the allegedly discriminatory offer of employment and was to be the employer under the terms of that offer. . . ." Def.'s Objections, p. 5, ¶ 3 (citing Sharkey Aff. ¶¶ 9, 10, 15). However, the fact that plaintiff knew at the time he submitted his affidavit (in January 1995) that defendant Ultramar is the party that committed the allegedly discriminatory acts is irrelevant—what matters is what he knew at the time of the EEOC filing. At that time, he knew defendant Ultramar to be only the prospective employer, but not the entity that committed the allegedly discriminatory acts.

### B. Whether the interests of the named party are so similar to the interests of the unnamed party.

The second prong of the *Johnson* test is met because defendant Ultramar's interests were represented by defendant Lasmo in the EEOC proceeding. The submissions establish that not only did defendant Ultramar have actual notice of plaintiff's EEOC charge, defendant Ultramar delegated defendant Lasmo to respond to the charge. Mr. Guarino even "agreed that Ultramar . . . bore the responsibility for the claims and would bear all costs and expenses incurred in connection with the matter." Pickerill Aff. p. 3, ¶ 7.[5] The two parties agreed that Lasmo would keep Ultramar informed of the progress of the administrative proceedings. Viewing the facts in the light

most favorable to plaintiff, defendant Ultramar's interests were fully represented by defendant Lasmo before the EEOC. Defendant Ultramar had actual knowledge of the charge, acknowledged responsibility for the challenged conduct, and made arrangements for defendant Lasmo to defend Ultramar's interests. Therefore, a reasonably trier of fact could find that the interests of Lasmo were so similar to Ultramar's that it was not necessary to name Ultramar as a respondent in the EEOC proceedings.

### C. Whether the unnamed party's absence resulted in actual prejudice to the unnamed party.

The third prong of the *Johnson* test is met because the absence of Ultramar from the EEOC proceedings resulted in no actual prejudice to Ultramar's interests. The EEOC proceedings were limited; there were no meetings or interviews with the plaintiff, representatives of Lasmo, or any third parties; no formal hearings or proceedings were conducted; no effort was made to conciliate the matter; and, most importantly, Ultramar was actually notified of the proceeding, and was affirmatively represented by Lasmo. *See* Pickerill Aff., p. 3–4, ¶ 7; *see also Goyette v. DCA Advertising, Inc.*, 830 F.Supp. 737 (S.D.N.Y.1993) (because EEOC did not take any action on the complaint, the unnamed party did not suffer any actual prejudice by not being named in the EEOC complaint); *Agugliaro v. Brooks Brothers, Inc.*, 802 F.Supp. 956, 960 (S.D.N.Y.1992) ("the crucial question . . . is whether [the unnamed party] had actual notice that a charge had been filed . . . with the EEOC."); *Koster v. Chase Manhattan Bank*, 554 F.Supp. 285, 289 ("Even if it is assumed that [the unnamed party] had no knowledge of the plaintiff's charges, the absence of any investigation or efforts to conciliate obviates any prejudice that could have resulted from a lack of notice.").

### D. Whether the unnamed party represented that its relationship to the complainant was to be through the named party.

The fourth prong of the *Johnson* test is met because a fact finder could rea-

---

5. Jerry Pickerill was the President of defendant Lasmo during times relevant in this action.

sonably conclude that defendant Ultramar in some way represented to plaintiff that its relationship with plaintiff was to be through defendant Lasmo. The employment offers were made by Mr. Guarino, General Counsel of both Lasmo and Ultramar, but who only identified himself to plaintiff as working for defendant Lasmo. Therefore, viewed in the light most favorable to plaintiff, defendant Ultramar impliedly represented to plaintiff that its relationship with the plaintiff was to be through defendant Lasmo.

Viewing the facts in the light most favorable to the non-moving party, the four prongs of the *Johnson* identity-of-interest test are met. Therefore, plaintiff's failure to name Ultramar in his EEOC charge is not fatal to the present action against Ultramar.

## CONCLUSION

For the reasons set forth above, Magistrate Judge Smith's Report and Recommendation is adopted in its entirety, and defendant Ultramar's motion to dismiss or for summary judgment is denied.

SO ORDERED.