**Sean CAMPBELL, Plaintiff,**

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS and IBT Local 918, Defendants.**

**No. CV–98–7407 (CPS).**

United States District Court, E.D. New York.

July 8, 1999.

Irene D. Thomas, Thomas & Associates, New York City, for Sean Campbell, plaintiff.

Franklin K. Moss, Spivak, Lipton, Watanabe, Spivak & Moss, Thomas M. Kennedy, Kennedy, Schwartz, & Cure, P.C, James L. Linsey, Cohen, Weiss & Simon, New York, for International Brotherhood of Teamsters, AFL–CIO, International Brotherhood of Teamsters, Local 918, Thomas Feeley, Eugene Maney, defendants.

## MEMORANDUM AND ORDER

SIFTON, Chief Judge.

Plaintiff, Sean Campbell, sues International Brotherhood of Teamsters ("IBT") for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 *et seq.* ("Title VII") and related state laws. Specifically, Campbell alleges that he was subjected to discrimination on account of his race while employed by International Brotherhood of Teamsters Local Union 918 ("Local 918"). Presently before the Court is defendant's motion to dismiss the complaint for lack of jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). For the reasons set forth below, defendant's motion is granted.

## BACKGROUND

The following facts are taken from the amended complaint and accepted as true for the purposes of this motion.

Plaintiff is an African–American man who resides at 185–07 Hilburn Avenue, St. Albans, New York. Defendant IBT is an umbrella labor organization and unincorporated association located at 25 Louisiana Avenue, N.W. Washington, D.C.

On October 2, 1997, the president of IBT, Ronald Carey, appointed Eugene Maney as trustee and Thomas Feeley as assistant trustee of Local 918. Local 918 is an unincorporated association, separate from IBT, which organizes certain types of employees in Brooklyn. The office of Local 918 is located at 2137–2147 Utica Avenue, Brooklyn, NY. While paid by IBT, Maney and Feeley worked at the offices of Local 918.

On October 6, 1997, Maney hired plaintiff as a business agent for Local 918. As a business agent, plaintiff's job responsibilities included visiting work sites, meeting with union members and answering their questions, organizing new members, handling employee grievances and arbitrations, assisting with the negotiation of collective bargaining agreements, and opening and closing the office. Plaintiff was paid by Local 918.

From the start of plaintiff's employment, Feeley professionally and socially isolated plaintiff at the workplace. Feeley had "minimal contact and conversation with plaintiff necessary to function in his posi-

tion." Am. Compl. at ¶ 12. Feeley ordered plaintiff on a daily basis to make photocopies, send and retrieve facsimiles, move Feeley's car, and pick up Feeley's breakfast and lunch. At no time did Feeley order Local 918 business agents who were white, such as Bob Didier, to perform such tasks.

At some point in October 1997, plaintiff complained to Maney about Feeley's discrimination against him. In response to plaintiff's complaints, Maney told plaintiff to tell Feeley " 'to go fuck himself.' ' Am. Compl. at ¶ 14. Maney offered no more assistance for the plaintiff.

In January 1998, a car belonging to one of Local 918's business agents broke down. Plaintiff suggested that the business agent use plaintiff's car while plaintiff borrowed a vehicle from Local 918. In response to plaintiff's suggestion, Maney called plaintiff a " 'fucking moron.' ' Am. Compl. at ¶ 15. The next morning, plaintiff complained of this discriminatory treatment to Maney and Feeley. Maney did not remember making the comment and Feeley did not take any action in response to plaintiff's complaint.

Plaintiff contemplated quitting his job due to the stress he felt over Feeley's treatment of him. Plaintiff's co-workers encouraged him to stay because "they believed that [plaintiff's resignation] was exactly what Feeley wanted: plaintiff to quit his job so that he could hire a white replacement." Am. Compl. at ¶ 16.

Later in January 1998, a recently fired shop steward who was a member of Local 918 arrived at the Local 918 office to consult with plaintiff and Feeley. During the meeting Feeley told plaintiff to move Feeley's car. Plaintiff asked the visiting union member to help plaintiff by moving Feeley's car. At that point, Feeley raced out of the office and, in front of the union member and numerous bystanders, yelled: " 'are you stupid, or crazy and what in the f-k is the matter with you!' ' Am. Compl. at ¶ 17.

After the incident, plaintiff again complained to Maney about Feeley's discrimi-natory treatment. Plaintiff pointed out again that Didier was not treated in the same manner. Maney assured plaintiff that he would speak to Feeley about the situation. At that meeting, plaintiff requested a transfer to another local union office within Maney's jurisdiction as trustee. Maney responded that plaintiff could not be transferred until the completion of a reorganization of IBT's local union offices.

Around March 1998, a position became available at International Brotherhood of Teamsters Local Union 1034, a local union within Maney's jurisdiction as trustee. Despite plaintiff's prior request for a transfer, plaintiff was not transferred, and the job went to a white male named Bill Ahearn.

"To make amends for not transferring plaintiff to the Local 1034 position," Maney promised that plaintiff could enroll in labor education classes at Cornell University. Am. Compl. at ¶ 20. Two days before the classes were to begin, however, Maney advised plaintiff that Local 918 would not pay for the classes because they were too expensive.

In April 1998, Maney told plaintiff that IBT ordered him to fire one business agent. Maney informed plaintiff that the employment termination policy mandated that the last hired by the local union is the first to be fired. As a result plaintiff would lose his job, Maney stated. Plaintiff reminded Maney that he was not the last business agent hired as Bill Ahearn was hired after him. Plaintiff also reminded Maney that all local unions "were separate and, therefore, the lay off should not affect [plaintiff]." Am. Compl. at ¶ 21.

On April 20, 1998, Feeley, Didier, and plaintiff met at Local 918 at 5:00 a.m. to go to a picket line in New Jersey. When plaintiff arrived, he advised Feeley that he needed to find a cash machine because he had no money for lunch or tolls. Feeley said that there was no time for plaintiff to withdraw money because they had to leave immediately for the picket line. Feeley

told plaintiff that he would lend him money. When they arrived at the picket line, Feeley asked plaintiff to purchase breakfast. Plaintiff "said nothing" as he did not have money to pay for the breakfast and Feeley had neglected to lend him money. Finally, Didier volunteered to pick up the breakfast. At lunch time, Feeley repeatedly ordered plaintiff to purchase the lunch for the three men. Plaintiff again said nothing. Feeley then told Didier that he would make sure plaintiff " 'fetch[ed] lunch' " whether plaintiff wanted to do so or not. Am. Compl. at ¶ 22. Plaintiff responded that Feeley should not speak to him that way. Feeley screamed that plaintiff " 'would not fucking eat' " and that if plaintiff did not liké his job, plaintiff should go home. Id. Plaintiff responded that his job did not include " 'fetch[ing]' " Feeley's lunch. Id.

On the morning of Wednesday, April 22, 1998, Maney ordered plaintiff to report to his office. Upon plaintiff's arrival, Maney informed him that he was fired because of the argument at the picket line.

Shortly after the incidents described above, plaintiff filed, with the assistance of counsel, a complaint with the Equal Employment Opportunity Commission ("EEOC") charging that Local 918 discriminated against him on the basis of his race. IBT was not named in the EEOC complaint.

Plaintiff's original complaint, filed on December 2, 1998, alleged causes of action against IBT, Local 918, Feeley, and Maney. Defendants moved to dismiss the complaint against all defendants on February 18, 1999. On February 22, 1999, plaintiff agreed to withdraw the complaint as to Local 918, Feeley, and Maney. Plaintiff filed an amended complaint against IBT on March 16, 1999.

The amended complaint states eight causes of action. Each count is described in turn.

The first cause of action asserts that IBT, through its agents, Maney and Feeley, engaged in a pattern of race discrimination and harassment in violation of 42 U.S.C. § 2000e. IBT had constructive knowledge of Maney and Feeley's actions and failed to supervise or discipline them adequately.

The second cause of action alleges that Maney hired a white male for the position of business agent in Local 1034 despite plaintiff's qualifications for the job and requests to be hired for that job.

The third cause of action states that IBT violated Title VII when it terminated plaintiff's employment and hired a white male as replacement.

The fourth cause of action alleges that IBT violated Title VII when it fired plaintiff in retaliation for plaintiff's opposition to being subjected to race discrimination.

Plaintiff asserts in the fifth cause of action that IBT engaged in race discrimination in violation of New York Human Rights Law § 296.

The sixth cause of action alleges that IBT hired a white male instead of the plaintiff who had previously requested that job in violation of New York Human Rights Law.

The seventh cause of action states that IBT terminated plaintiff's employment as a business agent on account of his race in spite of plaintiff's adequate job performance in violation of New York Human Rights Law.

The eighth cause of action alleges that IBT violated New York Human Rights Law by firing plaintiff from his employment with Local 918 and removing plaintiff from his position as elected shop steward in retaliation for the fact that plaintiff opposed IBT's discriminatory conduct.

### DISCUSSION

Defendant raises two arguments in support of its motion to dismiss. Defendant first contends that the Court lacks jurisdiction over plaintiff's workplace discrimination and wrongful termination claims because the complaint does not allege that IBT was plaintiff's employer. Second, de-

fendant contends that plaintiff's failure to name IBT in the EEOC complaint mandates the dismissal of the lawsuit against IBT pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] Each issue is addressed in turn.

As a threshold matter, plaintiff fails to assert a jurisdictional basis for the complaint because he does not allege that IBT employed him.

■ A district court may only exercise jurisdiction over a defendant in a Title VII case if, *inter alia,* the defendant is an "employer," as defined by 42 U.S.C. § 2000e. *See EEOC v. Arabian Am. Oil Co.,* 499 U.S. 244, 248–49, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (describing the term "employer" as used in Title VII as "jurisdictional"); *Astarita v. Urgo Butts & Co.,* No. 96 CIV 6991(PKL), 1997 WL 317028, at *3 (S.D.N.Y. June 10, 1997); *Perezic v. Crespo,* No. 94 Civ. 8283, 1996 WL 233687, at *2 (S.D.N.Y. May 7, 1996). Title VII defines an employer as:

> [A] person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person. . . .

42 U.S.C. § 2000e(b) (1994). In the present case, the parties agree that IBT was not plaintiff's employer of record.[2] Plaintiff advances three theories to assert jurisdiction over IBT: (1) that IBT and Local 918 are a single employer; (2) that Maney and Feeley are agents of IBT; and (3) that IBT, although not plaintiff's employer, had an affirmative duty to prevent the discrim-

ination. Each argument is addressed in turn.[3]

■ Under the single employer theory, "a wronged employee may impose liability on an entity that, although not his employer of record, exercises sufficient control over employment decisions to bear responsibility for the wrong in question." *Murray v. Miner,* 876 F.Supp. 512, 515 (S.D.N.Y.1995). To determine whether two entities should be treated as a single employer for Title VII purposes, the Second Circuit considers whether the two entities have: (1) interrelated operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control. *See Cook v. Arrowsmith Shelburne, Inc.,* 69 F.3d 1235, 1240 (2d Cir.1995). The second factor is the most crucial and under this factor "the critical question to be answered . . . is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Id.* (quotation omitted).

■ In the case, plaintiff does not allege or show that the operations of IBT and Local 918 were related or that the two entities shared common management or ownership. In the area of centralized control of labor relations, however, plaintiff asserts that IBT had control because Maney made employment decisions and he was a trustee appointed by IBT. A trustee assumes the duties of the local union officer he replaces and is obligated to carry out the interests of the local union and not the appointing entity. *See Tile, Marble, Terrazzo, Finishers, Shopworkers and Granite Cutters Int'l Union v. Ceramic Tile Finishers Union, Local 25,* 972 F.2d

---

1. Defendant had termed plaintiff's failure to name a defendant in the EEOC complaint a jurisdictional failure. Such failure is not a question of jurisdiction but rather is resolved pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Allen v. City of Chicago,* 828 F.Supp. 543 (N.D.Ill.1993).

2. Local 918 had less than fifteen employees and so fell short of the statutory definition of employer. Presumably because of this fact,

plaintiff withdrew his complaint against Local 918.

3. Plaintiff incorrectly asserts that the application of any one of these theories of liability obviate the need to name the defendant in the EEOC charge. In fact the law is clear that the only exception to naming the defendant in the prior EEOC proceeding is the identity of interest analysis. *See Johnson v. Palma,* 931 F.2d at 210.

738, 746 (7th Cir.1992). Accordingly, plaintiff cannot assert that IBT and Local 918 were single employers solely on the basis that IBT appointed a trustee who terminated plaintiff's employment.[4] The fact that the IBT constitution allows for the appointment of a trustee to operate the local union is not sufficient to find that the international union and its local union are single employers. *See Herman v. United Bhd. of Carpenters and Joiners, Local Union 971*, 60 F.3d 1375, 1383 (9th Cir.1995); *Childs v. Local 18, Int'l Bhd. of Elec. Workers*, 719 F.2d 1379, 1382 (9th Cir. 1983). Consequently, IBT and Local 918 cannot be considered a single employer for purposes of Title VII jurisdiction.

Plaintiff next asserts that IBT can be held liable for the discriminatory acts of its local union because Local 918, Feeley, and Maney are agents of IBT.

■ It is well settled that an international union is not vicariously liable for the acts of a local union without an agency relationship between the international and the local union. *See Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 216–18, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979). Because Title VII does not define the term "agent," the Court must turn to the common law principles of agency to determine whether Local 918 was acting as an agent of IBT. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Sparks v. Pilot Freight Carriers, Inc.*, 830 F.2d 1554, 1558 (11th Cir.1987). Under these principles, an agent is one who agrees to act on behalf of another, subject to the other's control. *See generally* Restatement (Second) of Agency §§ 219–237 (1958).

■ In the present case, the complaint contains no allegations from which it may be inferred that Local 918, Maney, or Fee-

ley were agents of IBT. Feeley's and Maney's status as trustee to Local 918, but appointed by IBT, does not confer agency on the two men, as they both owed a fiduciary duty to Local 918 and not to IBT. *See Tile, Marble, Terrazzo, Finishers, Shopworkers and Granite Cutters Int'l Union*, 972 F.2d at 746. The IBT constitution, appended to the complaint, explicitly states that trustees appointed by IBT act solely in the interest of the local union. *See* IBT Const. Art. VI, § 5(b).

■ Plaintiff's final argument is that IBT had an affirmative duty to intervene and stop the discrimination committed by Feeley and Maney. The law is well settled, however, that an "international union has no independent duty to intervene in the affairs of its local chapters, even where the international has knowledge of the local's unlawful acts." *Phelan v. Local 305*, 973 F.2d 1050, 1061 (2d Cir.1992); *Rodonich v. House Wreckers Union Local 95 of Laborers' Int'l Union*, 817 F.2d 967, 974 (2d Cir.1987); *National Electrical Benefit Fund v. Heary Bros. Lightning Protection Co.*, 931 F.Supp. 169 (W.D.N.Y.1995); *accord Carbon Fuel Co. v. United Mine Workers of America*, 444 U.S. 212, 217–18, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979); *Moore v. Local Union 569 of the Int'l Bhd. of Elec. Workers*, 989 F.2d 1534, 1543 (9th Cir.1993). As a result, affirmative duty is not a theory under which plaintiff can assert jurisdiction over IBT.

Even if the Court had jurisdiction to hear plaintiff's case, plaintiff fails to state a claim because he did not file an EEOC charge naming the defendant. Faced with a motion to dismiss a complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), the court must accept as true all factual averments in the complaint and must not dismiss the

---

**4.** A trustee's obligation to the local union is set forth in the IBT constitution, which reads in relevant part:

The Trustee shall be authorized and empowered to take full charge of the affairs of the Local Union or other subordinate body, to remove any or all officers and appoint

temporary officers at any time during his trusteeship, and to take such other action as in his judgment is necessary for the preservation of the Local Union or other subordinate body and its interests.

IBT Const., art. VI, § 5(b).

complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Easton v. Sundram,* 947 F.2d 1011, 1014–15 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted)). This standard is "applied with particular strictness when the plaintiff complains of a civil rights violation." *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir. 1991) (citations omitted).

■ A plaintiff must file a charge against a party with the EEOC or an authorized state agency before the complainant can sue that party in federal court under Title VII. *See* 42 U.S.C. § 2000e–5(f)(1) (limiting aggrieved party's right to sue to "the respondent named in the charge"). "[T]he charge serves to notify the charged party of the alleged violation and also brings the party before the EEOC, making possible effectuation of the Act's primary goal of securing voluntary compliance with its mandates." *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130,* 657 F.2d 890, 905 (7th Cir.1981). Title VII claims must be dismissed against an international union when only a local union was named in the EEOC complaint. *See Johnson v. Palma,* 931 F.2d 203, 210 (2d Cir.1991). In the present case, plaintiff does not dispute that IBT is not named in the EEOC complaint. The body of the EEOC complaint only mentions Local 918.

■ The Second Circuit has recognized an "identity of interest" exception to the rule that a lawsuit must be dismissed against a defendant who is not named in the EEOC complaint "[b]ecause these charges generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements ...." *See Johnson v. Palma,* 931 F.2d at 209. The exception "permits a Title VII action to proceed against an unnamed party where there is a clear identity of interest between the unnamed defendant and the party named in the administrative charge." *Id.* Following the Third Circuit's lead, the Second Circuit considers four factors in determining whether an identity of interest exists:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 209–10 (quoting *Glus v. G.C. Murphy Co.,* 562 F.2d 880, 888 (3d Cir.1977)); *see also Eggleston,* 657 F.2d at 905 ("[W]here an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance, the charge is sufficient to confer jurisdiction over that party."). In *Johnson,* the Second Circuit determined that dismissal was appropriate because these factors indicated no identity of interest and the unnamed party had not received notice of the charge against it. *See Johnson v. Palma,* 931 F.2d at 210–11.

■ As an initial matter, the identity of interest exception "only applies where plaintiff [was] not represented by counsel" at the time of the EEOC filing. *Sharkey v. Lasmo (Aul Ltd.),* 906 F.Supp. 949, 954 (S.D.N.Y.1995); *accord Alfano v. Costello,* 940 F.Supp. 459, 465 n. 2 (N.D.N.Y.1996) (identity of interest exception "provides leniency to individuals filing EEOC complaints *pro se* "). It is undisputed that plaintiff was represented by counsel when he filed the EEOC complaint. According-

ly, plaintiff was not *pro se* and cannot take advantage of the identity of interest exception.

 Even if plaintiff had filed his EEOC charge *pro se,* it is clear that plaintiff has not demonstrated an identity of interest between defendant IBT and Local 918. Plaintiff could have named, if he wished to, the international union in the EEOC complaint. Nothing in the record suggests that plaintiff was prevented from ascertaining the identity of IBT. Second, the interests of IBT and Local 918 are not so similar that it would be unnecessary to include IBT in an EEOC investigation. An EEOC inquiry, prompted by the filing of a charge against IBT, might have revealed that IBT played no role in decisions relating to plaintiff's treatment or termination. Without an investigation into IBT's culpability, an EEOC resolution against Local 918 would prejudice IBT because IBT would be forced to answer for a dispute when it played absolutely no role in the cause of that dispute. As the record does not reveal whether EEOC conducted any proceedings, the third element whether IBT suffered actual prejudice cannot be resolved. However, plaintiff's EEOC complaint charged Local 918 with specific acts of discrimination without mentioning IBT. Even if IBT had notice of charges against Local 918, it did not have any notice of charges against it. *See Stache v. International Union of Bricklayers & Allied Craftsmen,* 852 F.2d 1231 (9th Cir.1988). Finally, plaintiff was hired and fired by Local 918, and nothing in the record suggests that IBT represented to plaintiff that IBT had a relationship with plaintiff through Local 918.

Accordingly, plaintiff's failure to name IBT in the EEOC complaint and the inapplicability of the identity of interest exception mandate dismissal of plaintiff's lawsuit against IBT.

5. A district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Cas-*

## CONCLUSION

 For the reasons set forth above, the Court grants defendant's motion dismissing the complaint on plaintiff's claim arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Furthermore, this Court declines to exercise jurisdiction over the state law claims and dismisses those claims as well.[5]

The Clerk is directed to enter judgment dismissing the complaint and to furnish a filed copy of the within to all parties and to the magistrate judge.

SO ORDERED.

*tellano v. Board of Trustees of Police Officers' Variable Supplements Fund,* 937 F.2d 752, 758 (2d Cir.1991).