Daniel J. SHARKEY, Plaintiff–
Appellee–Cross–Appellant,

v.

LASMO (AUL LTD.), Defendant,

Ultramar Corporation, Defendant–
Appellant–Cross–Appellee.

Docket Nos. 99–7928(L), 99–7932(XAP).

United States Court of Appeals,
Second Circuit.

Argued March 22, 2000.

Decided June 8, 2000.

David S. Golub, Silver, Golub & Teitell LLP, Stamford, CT, for Appellee.

Michael F. Fitzgerald, Robinson, Brog, Leinwand, Reich, Genovese & Gluck, New York, NY, for Appellant.

* The Honorable Cynthia Holcomb Hall, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Before: LEVAL, STRAUB and HALL,* Circuit Judges.

Judge CYNTHIA HOLCOMB HALL dissents in part by separate opinion.

LEVAL, Circuit Judge:

Defendant Ultramar Corporation ("Ultramar") appeals from the October 13, 1998 judgment on the jury's verdict entered in favor of the plaintiff and against Ultramar, and from the July 7, 1999 Opinion and Order denying Ultramar's motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) or, in the alternative, for a new trial pursuant to Fed.R.Civ.P. 59(a). *See Sharkey v. Lasmo (Aul Ltd.)*, 55 F.Supp.2d 279 (S.D.N.Y.1999). Plaintiff Sharkey cross-appeals from the August 3, 1998 Opinion and Order denying his motion for equitable relief. *See Sharkey v. Lasmo, (Aul Ltd.)*, 15 F.Supp.2d 401 (S.D.N.Y.1998). We affirm the judgment and the order denying defendant's post-judgment motion. We vacate the order denying plaintiff's motion for equitable relief and remand for further proceedings.

## BACKGROUND

Sharkey brought suit under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* He alleged that in 1992 Ultramar intentionally discriminated against him on account of his age by offering him less attractive employment terms than those offered his younger colleagues, when all three were asked to relocate to Montreal. The facts are set out in the previously reported opinions, *see Sharkey v. Lasmo*, 55 F.Supp.2d at 282, 992 F.Supp. 321, 323–24 (S.D.N.Y.1998); 906 F.Supp. 949, 951–52 (S.D.N.Y.1995). After a seven-day jury trial, the jury returned a verdict on April 9, 1998, finding Ultramar had discriminated against Sharkey and awarding him damages of $1,427,200. On August 3, 1998 the court denied Sharkey's motion for additional equitable relief.

Judgment was entered on the verdict on October 13, 1998. On July 7, 1999 the district court denied the defendant's post-judgment motions. Both parties filed timely appeals.

## DISCUSSION

### A. Ultramar's Appeal

■ Ultramar contends the court erred in charging the jury on the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). We agree that juries should not be charged on the *McDonnell Douglas* burden-shifting framework. *See, e.g., Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 53 (2d Cir.1998) ("Courts—not juries—should determine whether the initial *McDonnell Douglas* burdens of production have been met."). It is the judge, not the jury, who must decide whether plaintiff has satisfied the requirements of *McDonnell Douglas*'s minimal version of a prima facie case, thereby shifting the burden of going forward to the defendant, as well as whether the defendant has subsequently satisfied the burden of proffering a nondiscriminatory reason for its conduct. Instructing the jury on this complex process produces no benefit and runs the unnecessary risk of confusing the jury. If the plaintiff has successfully made a prima facie case and the defendant has met its burden of proffering a reason other than discrimination for its actions, the court should instruct the jury that plaintiff bears the burden of proving that the defendant was motivated by prohibited discrimination—without reference to the successive burden-shifting tests that the parties have been required to pass.

Nonetheless, we see no basis in this record for concluding that charging the jury on a superfluous matter caused prejudice to the defendant. The jury was repeatedly charged on the plaintiff's ultimate burden to prove that age was a determinative factor or "real reason" in the defendant's treatment of Sharkey. The jury's verdict form furthermore evidences a find-ing "that the defendant Ultramar Corporation discriminated against plaintiff on the basis of his age." We can see no reason to order retrial.

■ Nor do we find merit in Ultramar's other attacks on the judgment. "View[ing] the evidence in the light most favorable to [plaintiff]," *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir.1993) (internal quotation marks omitted), and making all credibility determinations and drawing all inferences in his favor, we cannot say there was "no legally sufficient evidentiary basis for a reasonable jury to find" that Ultramar discriminated against Sharkey on account of his age. Fed.R.Civ.P. 50(a)(1). We therefore cannot agree with the defendant that it was entitled to judgment as a matter of law, notwithstanding the jury's verdict. Nor is the evidence legally insufficient to support findings that Sharkey acted reasonably in declining his job relocation offer and that he reasonably endeavored to mitigate his damages. Finally, we find no merit to Ultramar's argument that Sharkey's claim accrued on July 1, 1991 and was therefore time-barred. Therefore, we affirm the district court's order denying judgment as a matter of law.

### B. Sharkey's Cross–Appeal

■ On Sharkey's cross-appeal, we review the district court's order denying Sharkey equitable relief for abuse of discretion. *See Banks v. Travelers Cos.*, 180 F.3d 358, 365 (2d Cir.1999); *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir.1998). Sharkey contends that the district court erred in denying the award of prejudgment interest and pension credits. We agree, with qualifications. We therefore vacate the order and remand to the district court for further proceedings.

■ As to the denial of the award of pension benefits, Sharkey argues that he is entitled to service and salary credits for the same period as the jury awarded backpay. We agree with Sharkey that awards

for lost pension benefits are compensation for past economic loss—not a form of "prospective relief," as the district court found. *See Sharkey*, 15 F.Supp.2d at 404–05. If Sharkey was denied compensation for lost pension benefits, he was not made whole, and thus did not receive the proper measure of relief under the anti-discrimination laws. *See, e.g., Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727–28 (2d Cir. 1984).

■ However, it does not necessarily follow that Sharkey is entitled to the relief he seeks. We have distinguished two kinds of relief that may compensate a victim of discrimination for his lost pension benefits. *See Banks*, 180 F.3d at 365. First, the plaintiff's lost service and salary credits may be restored to his pension plan. *See id.; Geller v. Markham*, 635 F.2d 1027, 1036 (2d Cir.1980). This is the post-trial, equitable relief that Sharkey seeks. However, as we recognized in *Banks*, it is also possible to award money damages to compensate the plaintiff for the value of the pension benefits that were lost. This form of legal relief is proper for a jury to award. *See Banks*, 180 F.3d at 365 ("Had [plaintiff] actually requested money damages for lost pension benefits, the district court might well have been right to deem that form of relief legal. . . .").

■ Sharkey argues that because he did not include lost pension benefits in his calculations of damages argued to the jury or attempt to quantify his lost benefits either through testimony or in closing argument, the jury must not have included them in its award. The defendant, on the other hand, argues that the value of Sharkey's lost pension benefits were included by the jury in the award. The evidence Sharkey presented to the jury included reference to pension provisions offered him and his colleagues. Sharkey's counsel made reference to pension benefits in his closing argument. The court instructed the jury that the measure of damages should be "[Sharkey's] economic loss." The court further instructed the jury that

Sharkey was entitled to recover "lost salary and *benefits*, including . . . fringe benefits." And again, it charged: "you may award him an amount equal to the salary and *benefits* he would have received . . . less the amount of salary and *benefits* he received after he left the employ of the defendants, including severance payments, *pension benefits* and amounts from other employers. . . ." (Emphases added.) The jury returned one net verdict "as damages for [Sharkey's] *total financial* losses." (Emphasis added.) Given this record we cannot say for certain whether the jury did, or did not include the value of Sharkey's lost pension benefits in making its award.

On remand, the district court should make a determination whether the jury's award included the value of lost pension benefits. If not, Sharkey is entitled to equitable relief to provide him with his lost pension entitlement. If so, he has already been compensated, and is not entitled to equitable relief that would duplicate the relief awarded by the jury.

■ As to the court's denial of prejudgment interest, we have consistently stated that "[t]o the extent . . . that the damages awarded to the plaintiff represent compensation for lost wages, it is ordinarily an abuse of discretion *not* to include pre-judgment interest." *Gierlinger*, 160 F.3d at 873 (internal quotation marks omitted) (emphasis in original). Here, the district court relied on three grounds for denying prejudgment interest: (1) the jury's award was already "surprising[ly] genero[us]", *Sharkey*, 15 F.Supp.2d at 405–06; (2) Sharkey had made only "desultory efforts" to mitigate his damages, *see id.;* and (3) Sharkey had received a considerable settlement of his severance claims, *see id.* These grounds do not justify denying prejudgment interest on lost wages. *See Gierlinger*, 160 F.3d at 874–75. A court may not decline to award interest by reason of a belief that the jury's award is excessively generous. If the award was excessive, the court might have exercised

the power of remittitur. But it had no basis to deny prejudgment interest as a substitute for reducing an excessive award.

■ We agree, however, with the defendant that prejudgment interest may be inappropriate on portions of the award that are attributable to the restricted stock and stock options that plaintiff was denied, depending on how that award was calculated. *Cf. Scarfo v. Cabletron Systems, Inc.*, 54 F.3d 931, 961 (1st Cir.1995) (damage award for stock options calculated in manner that already represented the present value of the stock options at the date of judgment). It may also be inappropriate on the portion attributable to the value of lost pension benefits, if any. The court will need to apportion the jury's award. *See Gierlinger*, 160 F.3d at 875 (noting, where there is indication that jury included those losses, district court may "determine what portion of the award should be attributed" to particular categories of loss); *see also Williamson v. Handy Button Mach. Co.*, 817 F.2d 1290, 1298–99 (7th Cir.1987) (same and discussing appropriate methodologies); *cf. Malarkey v. Texaco, Inc.*, 983 F.2d 1204, 1214 (2d Cir.1993) (approving district court's "surmise[ ]" regarding reason for jury's award). The court should award prejudgment interest on that part of the jury's award attributable to lost wages. As to stock rights and options and the value of lost pension benefits, if any, it should determine whether any prejudgment interest is appropriate and if so how much.

## CONCLUSION

For the foregoing reasons judgment against defendant is AFFIRMED; the order of the district court denying defendant's Rule 50(b) and Rule 59(e) motion is AFFIRMED; the order denying defendant's post-trial motion for equitable relief is VACATED and the case is REMANDED for further proceedings as instructed herein.

CYNTHIA HOLCOMB HALL, Circuit Judge, concurring in part and dissenting in part.

I concur with everything in the majority opinion except for the statement that "the district court should make a determination of whether the jury's award included the value of lost pension benefits" and the preceding paragraph. The opinion states that "we cannot say for certain whether the jury did, or did not include the value of Sharkey's lost pension benefits in making its award." I believe it is plain from the record that the jury did not consider any request that Sharkey's annual pension be adjusted upward to reflect the tenure he would have had at Ultramar had he received a nondiscriminatory offer of employment.

Sharkey notes that his current pension payment is based on a formula related to his three highest annual salaries. Sharkey suggests that had he continued working for Ultramar at the salary offered, his current pension would be approximately $55,000 per year. But because the discriminatory job offer caused him to cease his employment, his pension is calculated based on his earlier employment for the firm, which was at a much lower salary, resulting in an annual pension of $17,000 per year.

I find Ultramar's arguments that the jury award already includes a lump sum payment to compensate Sharkey for his diminished future pension payments unpersuasive. Ultramar concedes that the "Ultramar Retirement Plan was not presented into evidence" (Ultramar Grey 21), and does not dispute Sharkey's claim that he did not include any reference to lost pension benefits in his damages table, which was submitted to the jury. All the evidence the jury heard concerning pension benefits related to the differentials in the pension packages awarded to Sharkey on the one hand, and McAward and Kuzmin on the other. Pages 1145 and 1149 of the Joint Appendix, cited by the opinion as instances where Sharkey's lawyer referred

to pension benefits in his closing argument, are only relevant to the instant issue in the sense that the word "pension" indeed appears on page 1145. The only vague reference to Sharkey's diminished pension benefits that I can find in the record is Sharkey's statement on page 789 of the Joint Appendix ("And I didn't know if he was familiar with our pension plan, because I know it was different than the Canadians. But to me, what that did was reduce the base salary on which my pension would be based on, and then in the future, when I did retire, my annual pension would be reduced by maybe $10,000 a year."). Only a jury with mind-reading powers could use this testimony to estimate the diminution in Sharkey's future pension benefits.

As the majority opinion correctly notes, it was proper for Sharkey to seek pension credit for the lost service as a form of post-trial equitable relief. Given this record, I would remand for the district court to calculate Sharkey's pension based on, at an absolute minimum, two additional years of employment at the salary offered him by Ultramar.