Elizabeth E. BANKS, Plaintiff–Appellant–Cross–Appellee,

v.

The TRAVELERS COMPANIES, Defendant–Appellee–Cross–Appellant.

Docket Nos. 98–7776, 98–7804.

United States Court of Appeals, Second Circuit.

Argued Feb. 5, 1999.

Decided May 12, 1999.

---

Gregg D. Adler, Livingston, Adler, Pulda and Meiklejohn, Hartford, CT (Jonathan L. Gould, Hartford, CT; James L. Kestell, Falls Church, VA, of counsel), for Plaintiff–Appellant–Cross–Appellee.

Glenn W. Dowd, Day, Berry & Howard LLP, Hartford, CT (Albert Zakarian, William D. Thompson, Jr., of counsel), for Defendant–Appellee–Cross–Appellant.

Before: CARDAMONE, CABRANES, and STRAUB, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Elizabeth E. Banks appeals from a May 5, 1998 judgment of United States District Court for the District of Connecticut (Ellen Bree Burns, Judge), entered following a jury verdict in Banks's favor. The jury found defendant The Travelers Companies ("Travelers") liable under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §§ 621 et seq., for discharging Banks in January 1994 on account of age, and awarded her $77,127 in damages. Banks principally argues on appeal (No. 98–7776) that the district court erred in concluding, as a matter of law, that she was ineligible for damages for the period after April 1, 1996, when the department in which Banks had worked underwent a reduction in force. The district court ruled that whether Banks would have survived this reduction in force was pure speculation. Accordingly, the court (1) instructed the jury not to award Banks any back pay for the period between April 1, 1996 and the entry of judgment, and (2) declined to award Banks either reinstatement or post-judgment damages known as "front pay." In addition, Banks argues that the district court erred in its denial of her post-verdict application for an injunction directing defendant to "restore" Banks's lost pension credits.

In its cross-appeal (No. 98–7804), Travelers argues that the district court erred in (1) refusing to instruct the jury that because Banks was hired and fired by the "same actor," the jury was entitled to infer that the decision to discharge Banks was not motivated by age, and (2) denying Travelers' motion for judgment as a matter of law, pursuant to Fed.R.Civ.P. 50.

We conclude that the evidence presented at trial would have permitted a reasonable trier of fact to conclude that Banks would have been retained following the April 1996 reduction in force had she not been discriminatorily discharged in January 1994. In addition, we conclude that the district court erred in its reason for denying Banks's post-verdict application for "restoration" of her pension credits. Accordingly, we vacate the judgment of the district court insofar as it incorporates the award of damages and the denial of reinstatement, front pay, and pension credits and remand to the district court for further proceedings, including a new trial limited to damages. We affirm, however, with respect to Travelers' cross-appeal.

## BACKGROUND

Banks worked for Travelers from July 1986 until her discharge in January 1994. At the time she was discharged, Banks was 49 years old and served as a Senior Communications Consultant in defendant's Loss Prevention and Engineering Division ("LP & E Division"). After Banks's employment was terminated, her duties were assumed by Cindy Dvorachek, who was then 27 years old.

■ Banks filed the instant action in March 1995, asserting that she had been discharged on account of her age, in violation of the ADEA.[1] The evidence presented at trial which we are required to view in the light most favorable to plaintiff, who obtained a favorable jury verdict, see *Marchica v. Long Island R.R. Co.*, 31 F.3d 1197, 1200 (2d Cir.1994) would have permitted the jury to find the following facts:

Prior to her employment at Travelers, Banks obtained a bachelor's degree in English, a master's degree in education, and a certificate in technical writing and corporate publications, and worked as an English teacher and as a computer marketing representative. She was hired by Travelers in 1986, and began work as a Technical Writer in Travelers' Information Systems Division. In April 1988, she accepted a transfer and apparently a promotion to the position of Senior Technical Writer in the

---

1. Banks initially asserted, but later withdrew, the additional claim that she was discharged on account of sex, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e et seq.

LP & E Division. She was interviewed for that position both by Beth Haluszka, the supervisor of the LP & E Communications Unit, and by Haluszka's superior, Halbert M. Dufault, Haluszka met with Banks to extend the offer, but Dufault testified that only he had the authority to hire Banks, and that he had made the ultimate decision.

In April 1989 approximately one year after Banks transferred to the LP & E Division she was joined by Dvorachek, a recent college graduate who was hired to work as an Assistant Technical Writer. Shortly after Dvorachek was hired, it appears that Banks's title was changed from Senior Technical Writer to Senior Communications Consultant, and Dvorachek's from Assistant Technical Writer to Communications Consultant; there is no indication in the record, however, that either redesignation was associated with a promotion. In April 1993, Dvorachek was promoted to Senior Communications Consultant, the same job title then held by Banks.

By 1993, Banks and Dvorachek were the only two remaining employees in the Communications Unit of the LP & E Division. Late in that year, Dufault was asked by his superior to look for positions in the Division that could be eliminated in order to cut costs. In addition, an internal report had suggested the need to name a person to the position of Communications Manager; that person would coordinate communications between the main LP & E office and employees working in the field. Dufault testified that he decided that both Senior Communications Consultant positions should be eliminated, and that either Banks or Dvorachek should be named to a newly created position of Communications Manager.

Dufault, in collaboration with employee relations specialist Stephanie Grabowski, purported to follow a methodical process of meetings and evaluations, which the parties refer to as a "staff adjustment" process, in deciding between the two candidates. There was evidence in the record, however, from which the jurors could have inferred that Dvorachek had actually been preselected over Banks, and that the evaluations were conducted merely to create the illusion that Banks was given equivalent consideration. In particular, although the record suggests that the "staff adjustment" process was completed at some time between late December 1993 and early January 1994, the LP & E budgetary documents for December 1993 already omitted Banks's name from the list of employees. And in October 1993 the month before Dufault and Grabowski commenced the "staff adjustment" process Dufault fixed the salary increases for 1994, granting Dvorachek an 11.4% increase but leaving Banks's salary unchanged. In addition, the jury could have reasonably concluded from Banks's more extensive work experience and seniority, as well as from an earlier performance evaluation,[2] that she was the better qualified candidate.

In any event, Banks was informed on January 10, 1994 that she was discharged, effective January 21, 1994. Thereafter, Dvorachek was named to the remaining position.

Dvorachek continued to occupy this position until April 1996, when Travelers purchased a portion of the insurance business of Aetna Life and Casualty Company. At that time, Travelers consolidated the communications functions formerly performed

---

**2.** It appears from the record that neither Banks nor Dvorachek had been evaluated for their work since 1991. Their 1991 performance evaluations state, inter alia, that each has done an "excellent job." Their 1990 evaluations, though more remote in time, do evince an attempt at quantification. In that year, Banks received an overall rating of "1" (on a descending scale of 1 to 5), whereas Dvorachek received a "2." In addition, the record shows that in both 1992 and 1993, Banks received letters of commendation from her superiors and writing awards from the International Association of Business Communicators. There is no evidence to indicate that Dvorachek received such recognition.

by Travelers and by the acquired business into a single unit, thereby reducing the number of communications positions from 26 to 13. Dvorachek was among the 13 competitors who were retained in the newly centralized unit. Dvorachek testified that her new job title was Senior Communications Advisor, and that she was now paid at a salary grade of 66, which was two levels higher than her grade as Communications Manager.

Based on the evidence presented at trial, the jury returned a verdict in favor of Banks and awarded her $77,127 in damages. After ruling on various post-verdict motions, which are discussed below to the extent relevant to our review, the court entered judgment. Banks filed a timely appeal, and Travelers countered with a timely cross-appeal.

## DISCUSSION

### I. Banks's Appeal

#### A. Jury Instruction Precluding Post–April 1996 Back Pay

█ Banks first faults the district court for ruling that the evidence did not permit a reasonable finder of fact to infer that Banks would have been retained following the April 1, 1996 reduction in force. Banks argues that the jury's verdict in her favor could have permissibly been based on a determination that Banks was terminated on the basis of age rather than on the basis of Dvorachek's superior qualifications. Banks further argues that if the jury concluded that Dvorachek's skills were not superior to Banks's, then it would be entitled to infer that Banks would have survived any reduction in force that had not resulted in Dvorachek's termination. The district court ruled that any such inference would be "entirely too speculative," and thus instructed the jury that it

could not award back pay for the period after the April 1, 1996 reduction in force.

We agree with Banks that such an inference was permissible. We considered a similar argument in *Paolitto v. John Brown E. & C., Inc.*, 151 F.3d 60 (2d Cir.1998) an appeal decided after judgment had already entered in the instant case. In Paolitto, the plaintiff prevailed on a claim that his employer had violated the ADEA by promoting a younger worker instead of the plaintiff in 1987. Because the plaintiff had been terminated on concededly nondiscriminatory grounds in 1993, however, the district court refused to award post-termination relief. On appeal, we "agree[d] with Paolitto that, under the circumstances in particular the fact that [the younger employee promoted in 1987] was not terminated as part of the company-wide layoff in 1993 [plaintiff] need not have alleged that his termination in 1993 was discriminatory in order to recover post-termination relief."[3] *Id.* at 68. Like the plaintiff in Paolitto, Banks was entitled to argue that, but for the earlier act of discrimination, she would have been retained amid the employer's subsequent layoffs. A jury would be permitted but not necessarily required to accept that inference.

Travelers draws to our attention record evidence indicating that Dvorachek was not merely retained in April 1996, but received a promotion as a result of the competitive process for the positions remaining after the April 1996 reduction in force. While the evidence does show that Dvorachek herself received a pay-grade promotion, the record is silent as to whether the only remaining positions were for that higher pay grade. Travelers may argue to the jury that Banks would not have been retained in April 1996 for exam-

---

**3.** The *Paolitto* Court did not reverse on this basis, however, because it agreed with the district court that the plaintiff had "sandbagg[ed]" the defense by "repeatedly fail[ing] to respond to [the defendant's] interrogatories and document requests regarding his claim for damages and [giving] no notice prior to the very eve of trial that he was seeking post-termination relief." *Paolitto*, 151 F.3d at 68. No such circumstances are presented in the instant case.

ple, because her skills would not have rendered her as well suited as Dvorachek to fill any of the remaining positions. But we do not see the evidence in this case commanding such an inference in Travelers' favor.

Accordingly, we hold that the district court erred in instructing the jury that it could not award damages for the period from April 1, 1996 to the date of the verdict, and we remand the cause for a new trial, limited only to damages, see, e.g., *Annis v. County of Westchester*, 136 F.3d 239, 249 (2d Cir.1998) (affirming as to liability, but vacating damages award and remanding for new trial as to damages),[4] in which the parties will be entitled to present to the jury, inter alia, their respective arguments relating to post-April 1996 back pay.

We have held that "[a] plaintiff who has proven a discharge in violation of the ADEA is, as a general matter, entitled to backpay from the date of discharge until the date of judgment." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 167 (2d Cir.1998) (emphasis added); accord *Dunlap–McCuller v. Riese Org.*, 980 F.2d 153, 159 (2d Cir. 1992). In calculating its back pay award, the jury will obviously not be able to anticipate the date on which judgment will enter. Accordingly, any lag time between the jury's verdict and the district court's ultimate judgment ordinarily should be remedied by the court, in the form of a pro rata increase of the back pay award. Cf. *Nord v. United States Steel Corp.*, 758 F.2d 1462, 1472–73 (11th Cir.1985) (back pay award should extend to date of judg-

ment, rather than to earlier date on which court announced findings of fact following bench trial).

**B. Reinstatement and "Front Pay"**

The ADEA confers upon the courts a "broad grant of remedial authority" with which district judges are encouraged to "fashion remedies designed to ensure that victims of age discrimination are made whole." *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727–28 (2d Cir. 1984). Among the forms of equitable relief explicitly authorized by the ADEA is reinstatement of the plaintiff's employment. See 29 U.S.C. § 626(b). We have recognized, however, that reinstatement is not always feasible for instance, because no position may be available or because animosity may impede the resumption of a reasonable employer-employee relationship. See *Kirsch*, 148 F.3d at 169; *Whittlesey*, 742 F.2d at 728. In such situations, the district court is empowered to order "a reasonable monetary award of front pay," *Whittlesey*, 742 F.2d at 728 that is, an award of "future lost earnings," *United States v. Burke*, 504 U.S. 229, 239 n. 9, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992) (defining "front pay"). In contrast to back pay, which is determined by the jury in calculating the plaintiff's damages, an award of front pay under the ADEA is exclusively within the court's equitable discretion. See *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1257–58 (2d Cir.1987).

In the instant case, following the jury's verdict, Banks moved for reinstatement or, in the alternative, for front pay. The dis-

4. Partial retrial is appropriate only where "it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice." *Gasoline Prods. Co. v. Champlin Ref. Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 75 L.Ed. 1188 (1931); accord *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 23 (2d Cir.1996). We are satisfied that the error infecting the damages award is entirely separable from the underlying finding of liability, and accordingly conclude that retrial of damages alone is appropriate in this case. Although Travelers asks that any new trial "should be one de novo for liability and damages rather than one limited to damages," it does not attempt to demonstrate as it must to prevail on this claim that the issue of damages is in any way intertwined here with that of liability. We need not decide whether the pre- and post-April 1996 damages should be deemed separable from each other (in which case we would presumably remand only the latter for retrial), because Banks's brief asks us simply and repeatedly to remand for a new trial on "damages" generally.

trict court denied the motion, in respect to both reinstatement and front pay, on the ground that the evidence did not logically allow the inference that plaintiff would have been retained following the April 1996 reduction in force. In addition, the court stated that reinstatement would be inappropriate in light of the animosity that had developed between plaintiff and her employer as a result of this litigation.

■ Because front pay and reinstatement are forward-looking remedies, they are inappropriate where the employment term would already have ended by the time of judgment. See *Kirsch*, 148 F.3d at 169; see also *Geller v. Markham*, 635 F.2d 1027, 1036 (2d Cir.1980) (reinstatement unwarranted where plaintiff had been hired only for a one-year term and that term had expired). However, as discussed in the previous section, the district court erred in concluding that plaintiff had not introduced evidence from which it could be inferred that she would have been retained after April 1996 had she not been discharged discriminatorily in 1994. It follows, therefore, that prospective relief was not precluded altogether.

■ We remand to the district court for further consideration, in the exercise of its informed equitable discretion, of the prospective remedies of reinstatement and front pay. The parties divide as to whether the court had before it evidence of animosity sufficient to justify the denial of reinstatement.[5] We do not pass upon this issue, but leave it to the district court in the first instance. If there is a lacuna in the record evidence, the parties should be afforded an opportunity to fill it on remand.

---

5. As we have discussed above, animosity between the employer and employee would be a ground on which the court might decline to order reinstatement, see *Whittlesey*, 742 F.2d at 728, but not a ground on which to deny front pay, see *id*. (noting that in situations where reinstatement is not feasible, for instance due to the parties' animosity, the court is empowered to award front pay).

## C. Pension Credits

■ Finally, Banks challenges the district court's denial of her post-verdict motion for the restoration of her lost pension benefits. The district court ruled that what it termed "damages for the loss of pension benefits" amount to legal rather than equitable relief, and must accordingly be awarded by the jury rather than the judge. See generally *Dominic*, 822 F.2d at 1257 (under the ADEA, the jury finds facts relating to legal claims, whereas the court makes findings relating to equitable claims). Because Banks waited until after the jury's verdict to request such relief, the court reasoned that her claim was untimely.

Had Banks actually requested money damages for lost pension benefits, the district court might well have been right to deem that form of relief legal, and to rule Banks's post-verdict application untimely. But it is clear from Banks's motion as well as her supporting memorandum of law that she sought the "restoration of benefits ... including ... pension credits." And we have squarely held that "lost pension rights ... fall within the category of equitable relief." *Geller*, 635 F.2d at 1036. Unlike damage awards, "which are payable to the plaintiff, pension benefits are paid into pension annuity funds. They merely replace the benefits that would have accrued during the [period] of employment wrongfully denied to [the plaintiff]." *Id.* Thus, the district court erred in ruling that Banks's claim for pension benefits should have been presented to the jury, and that it was therefore untimely when presented in a post-verdict motion.[6]

---

6. The district court also likened the instant case to *Truskoski v. ESPN, Inc.*, 60 F.3d 74 (2d Cir.1995). In Truskoski, a prevailing Title VII plaintiff moved the district court for restoration of her pension credits eighteen months after entry of judgment in the underlying action. See *id.* at 76. The district court in Truskoski construed this motion as one to alter or amend the judgment pursuant to Fed. R.Civ.P. 59(e) or 60(b), and then held that the

We conclude that Banks's motion was properly presented to the district court, and that its merits should be considered by the judge on remand.

## II. Travelers' Cross–Appeal

### A. "Same Actor" Instruction

■■■ Travelers principally argues on its cross-appeal that the district court erred in refusing to give what Travelers terms a "same actor" instruction an instruction to the effect that where the plaintiff is hired and fired by the same decisionmaker (especially within a short period of time) the jury may infer that the decisionmaker did not act with discriminatory animus. In particular, Travelers requested the following instruction:

> In this case, you have heard undisputed evidence that Hal Dufault hired the plaintiff in to [sic] the LP & E Communications Unit in 1988 when she was 44 years old, and that Mr. Dufault also made the decision to terminate the plaintiff's employment in January of 1994 when she was 49 years old. On the basis of these undisputed facts that Mr. Dufault both hired the plaintiff and decided to terminate her employment, within a short time span of five years, you may infer that his decision to terminate her employment was not motivated by her age.

Although the district court refused to so instruct the jury, it later explained to the attorneys that it was "perfectly appropri-ate for defense counsel to argue ... that there's an inference the jury can draw that there was no age discrimination because of that." In fact, defense counsel did take the opportunity in his closing argument to urge the jury to draw this inference.[7]

The parties agree that we have previously recognized the availability of the "same actor" inference. In *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553 (2d Cir. 1997), cert. denied —— U.S. ——, 119 S.Ct. 349, 142 L.Ed.2d 288 (1998), we affirmed a district court's grant of summary judgment for the defendant in an employment discrimination case. In the process, we made the following, pertinent observation:

> Although each case must involve an examination of all the circumstances, some factors strongly suggest that invidious discrimination was unlikely. For example, when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire. This is especially so when the firing has occurred only a short time after the hiring.

*Id.* at 560 (citations omitted).[8] We then proceeded to examine the record evidence and determined that it would not permit a reasonable factfinder to infer that the plaintiff was the victim of discrimination. One of many considerations that influenced that decision was the fact that the plaintiff had been hired and fired within eight days by the same individual. *See id.* at 561.

> Now, it's Ms. Banks's claim, as you know, that Hal Dufault, although he hired her at 45, that when she turned and got into her 49th year, he made this decision based on age. That's her claim. Something happened in that time period and he turned against her because of her age.
>
> And you have to ask yourself: Does the proof really show that? Does that make any sense?

---

motion was not filed within the post-judgment period provided by those rules. *See id.* We agreed and affirmed. *See id.* at 76–78. Unlike the plaintiff in Truskoski, Banks filed her motion for restoration of her pension benefits before, not after, the entry of judgment. *See* District Court Docket Sheet at 12 (Banks's motion filed on September 24, 1997), 16 (first document denominated "judgment" entered on March 2, 1998); *see also id.* at 18 (second amended judgment entered on May 5, 1998). Accordingly, Truskoski sheds little light on the issues before us.

7. Defense counsel's argument to the jury included the following:

8. Other courts have also accepted the "same actor" inference. *See Grady*, 130 F.3d at 560 (collecting cases).

However, we did not have occasion in Grady to adopt a rule requiring district courts to instruct jurors on the availability of the "same actor" inference, and we decline to impose such a rule here. The district court properly permitted Travelers to urge the jurors to draw this commonsensical inference from the facts, and we see no reason why the jurors would have needed an instruction from the judge in order to consider doing so.

## B. Defendant's Rule 50 motion

Travelers also argues that the district court erred in denying its motion for judgment as a matter of law, pursuant to Fed. R.Civ.P. 50. In particular, Travelers argues that the trial evidence failed to permit a reasonable factfinder to conclude that Banks was discharged due to her age. On the basis of the trial evidence catalogued above, we conclude that the district court properly denied this motion.

One of Travelers' arguments deserves specific discussion. Travelers argues that it has asserted a legitimate, non-discriminatory reason for its decision to discharge Banks namely, Dvorachek's superior score on the "staff adjustment" evaluations conducted by Dufault and Grabowski and that Banks has failed to show that this asserted reason was actually pretext for discrimination. See, e.g., *Austin v. Ford Models, Inc.*, 149 F.3d 148, 152–53 (2d Cir.1998) (discussing shifting-burden test used to evaluate ADEA claims). As discussed above, the trial evidence would have allowed a reasonable juror to infer that Travelers pre-selected Dvorachek and did not actually base its decision to discharge Banks rather than Dvorachek on its purported "staff adjustment" process. In addition, the evidence would have allowed a factfinder to conclude that Banks had the superior qualifications. Nevertheless, Travelers argues that even if the decision to retain Dvorachek over Banks was unfair, the record does not include any evidence on which a finder of fact could

reasonably attribute such unfairness to discrimination on account of Banks's age.

We recognize that a disparity in the ages of an ADEA plaintiff and her replacement or successor will not, by itself, always suffice to demonstrate invidious discrimination. First of all, the discrepancy in age may be too small to stand by itself as a predicate for a finding of discrimination. See *O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (inference of discriminatory basis for discharge "can not be drawn from the replacement of one worker with another worker insignificantly younger") (emphasis added). In addition, we have recognized that where the record contains evidence of other possible non-discriminatory reasons for discharge apart from the reason shown to be pretextual an inference of discrimination may not be reasonable. See *Hollander v. American Cyanamid Co.*, 172 F.3d 192, 199 n. 3, 202 n. 5 (2d Cir.1999) (noting that plaintiff was replaced by two employees, one of whom was 11 years younger, but concluding as follows: "[T]he record before us shows that the stated reason may have been a pretext for various non-discriminatory reasons. This is not a case in which a finder of fact could reasonably conclude that [plaintiff's] termination was, more probably than not, due to age discrimination because no other, non-discriminatory explanation was possible."). In the instant case, however, the 22–year difference in the ages of Banks and Dvorachek can hardly be considered insignificant as a matter of law. In addition, this is not a case like Hollander, in which the record contained a variety of plausible non-discriminatory reasons for the plaintiff's discharge. Assuming that the jury concluded as it was permitted to do on the facts presented that Dvorachek was selected over Banks even though Banks was recognized as the better qualified candidate, the record appears to be devoid of any consideration other than the wide age discrepancy between the two candidates that could

explain such preferential treatment accorded Dvorachek. Under the circumstances presented here, the jury was entitled to infer that age was the decisive factor in this contest between the only two candidates for the remaining position. Because Travelers has failed to present a persuasive ground on which to upset the jury's verdict in Banks's favor, we conclude that the district court properly denied defendant's Rule 50 motion.

## CONCLUSION

To summarize:

(1) We hold that the district court erred in instructing the jury that it could not award damages for the period from April 1, 1996 to the date of the verdict.

(2) We hold that the district court erred in the reasoning employed to deny plaintiff's motions for equitable relief consisting of a restoration of her pension credits and either reinstatement or front pay.

(3) We hold that the district court did not err in refusing defendant's proposed "same actor" instruction or in denying defendant's motion for judgment as a matter of law.

(4) Accordingly, we (a) affirm the judgment of the district court as to defendant's cross-appeal, (b) vacate the judgment insofar as it incorporates the award of damages and the denial of reinstatement, front pay, and pension credits, and (c) remand the cause to the district court for further appropriate proceedings, including (i) a new jury trial limited to damages and (ii) a judicial resolution of plaintiff's motions for restoration of her pension benefits and for either reinstatement or front pay.