Leonard VERNON, Plaintiff,

v.

The PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendants.

No. 95 CIV. 4594(PKL).

United States District Court, S.D. New York.

Aug. 26, 2002.

226

Thomas Bello, Esq., Staten Island, NY, for Plaintiff.

Megan Lee, Esq., The Port Authority of New York & New Jersey, New York City, for Defendants.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff Leonard Vernon ("Vernon") commenced this action against his former employer, The Port Authority of New York and New Jersey ("Port Authority"), alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq* (2001) ("Title VII") and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 623(a), (d) (2001) ("ADEA"). Following a trial on the merits and a finding in favor of Vernon, Vernon's attorney submitted an application for attorney's fees and an economic report detailing both an award of back pay and an award of front pay owed to Vernon. The

Court will address these submissions in seriatim.

**Background**

On May 24, 2002 the jury returned a verdict in favor of Vernon. *See* Trial Transcript, *Vernon v. Port Authority of New York and New Jersey* ("Tr."), at 1222–25. With regard to the first instance of alleged discrimination, the downgrade of Vernon's Performance Planning and Review ("PPR") in January 1995, the jury found that the Port Authority discriminated against Vernon on the basis of national origin, thus violating Title VII, but that age was not a motivating factor in the Port Authority's decision to downgrade Vernon's PPR ratings, and therefore there was no ADEA violation on this ground. *See id.* at 1223. The jury did find, however, that the Port Authority's motivation to downgrade Vernon's PPR ratings was founded in retaliation for Vernon filing a complaint with the Port Authority's Office of Equal Opportunity. *See id.* This retaliatory action violated both Title VII and the ADEA.

In addition, with regard to the issue of "Failure to Promote" in March of 1995, the jury found that the Port Authority violated Title VII by discriminating against Vernon on account of his race and national origin, but that there was no ADEA violation because age was not a motivating factor for its decision. *See id.* The jury did find that retaliation was a motivating factor in the Port Authority's decision not to promote Vernon, and thus violated both Title VII and the ADEA. *See id.* at 1223–24. Further, the jury awarded Vernon $1.5 million in compensatory damages and found that he was entitled to back pay. *See id.* at 1224–25.[1]

On June 21, 2002 Vernon submitted to the Court an application for attorney's fees and an economic report regarding back pay and front pay that is owed to Vernon. *See* Analysis of Economic Loss of Leonard A. Vernon prepared by Leonard R. Freifelder, Ph.D. ("Economic Report"). Vernon seeks $78,250 in compensation for the work of his attorney, Thomas F. Bello, Esq. on this matter. *See* Letter dated June 21, 2002, written by Thomas F. Bello, Esq. to Judge Leisure ("Letter of June 21"). In response, the Port Authority has submitted its economic report regarding back pay and front pay owed to Vernon and its opposition to the award of attorney's fees.

**Discussion**

**I. Attorney's Fees**

**A. Applicable Law**

An attorney for a prevailing plaintiff is eligible to seek attorney's fees and costs under both Title VII and the ADEA. *See* 42 U.S.C. § 2000e–5(k); *Lightfoot v. Union Carbide Corp.,* 110 F.3d 898, 913 (2d Cir.1997) (citing *Hagelthorn v. Kennecott Corp.,* 710 F.2d 76, 86 (2d Cir.1983)); *Bridges v. Eastman Kodak Co.,* 102 F.3d 56, 58 (2d Cir.1996) (McLaughlin, J.). Plaintiffs are entitled to recover taxable costs, pursuant to 28 U.S.C. § 1920, and all expenses normally charged to the client. *See LeBlanc–Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir.1998). However, costs do not include overhead or items normally incorporated within the attorney's fee. *See id.*

Attorney's fees are determined using the "lodestar" method, which is calculated by multiplying the number of hours spent on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The attorney, in his application for fees,

---

**1.** The parties stipulated that the judge rather than the jury shall determine the precise amount of back pay. *See* Tr. at 1038–39.

The calculation of back pay is further discussed *infra* in Section III.

should submit a record of the hours worked, such that the Court can verify the amount of fees requested. *See id.* If such records are inadequate the Court may reduce the award accordingly. *See id.* Moreover, the Court has a great deal of discretion in determining attorney's fees. Thus, if it feels the hours charged are superfluous or unreasonable, it may deduct these hours from the lodestar calculation. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir.1997) (deducting hours from the lodestar calculation because found to be excessive).

■ In determining the fees to be charged, the Court should use a rate that is reasonable for the district in which it sits. *See Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir.1983). Moreover, the rate should be compatible with rates of attorneys of "comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In addition, submissions should be made in accordance with Rule 54(d)(2)(B), which requires that a motion for attorney's fees be filed no later than 14 days after entry of judgment, unless otherwise provided by statute or order of the court. *See* Fed. R.Civ.P. 54(d)(2)(b).

■ The fee may be adjusted upward or downward depending on the circumstances of the case. The Court may adjust the fee upward if the case presents a novel or difficult question, or if the skill required to present the case is of a great magnitude. *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933 (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 718 (5th Cir. 1974)). The Supreme Court has noted, however, that only in rare situations are these factors not accounted for in both the billable hours spent on the case and the hourly fee that is charged, and therefore an adjustment often amounts to a double counting of these factors. *See Blum*, 465 U.S. at 898, 104 S.Ct. 1541.

■ Likewise, the Court may adjust the fee downward. For example, in suits comprised of multiple claims, the attorney may only charge for hours spent on meritorious claims, and therefore the fee can be adjusted accordingly. *See Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1183 (2d Cir.1996). Downward adjustment should not occur, however, when the claims are "inextricably intertwined" and "involve a common core of facts or [are] based on related legal theories." *Id.* (quoting *Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1259 (2d Cir.1987)).

### B. Application

### 1. Hours Worked

■ The law is clear that while an attorney does not have to account for every minute of his time, the records should be accurate enough for a court to make a genuine determination of the actual hours spent on the litigation. *See Hensley*, 461 U.S. at 437 n. 12, 103 S.Ct. 1933. After reviewing the record summary submitted herein, it is apparent that there is a great deal of discrepancy between the actual hours reported by Mr. Bello and the hours he charged his client. This may be a result of unclear time charts or simple miscalculations. In either case, Mr. Bello has failed to comply adequately with the applicable case authorities, and submit time sheets that allow the Court to make an accurate determination of the time spent on specific matters. *See Stratton v. Department for Aging for City of New York*, No. 91 Civ. 6623, 1996 WL 352909, at *4 (S.D.N.Y. June 25, 1996) (citing *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933) (holding that detailed records of all hours billed must be submitted to the court). The Port Authority has specifically challenged the hours Mr. Bello has submitted in conjunction with the depositions and trial prepara-

tion. *See* Letter Submitted by The Port Authority of New York and New Jersey, dated July 19, 2002 ("Port Authority Letter"), at 4.[2]

**Chart of Hours Worked Presented By Thomas Bello**

| Matter | Who/Hours Reported | Billable Time Charged |
|--------|--------------------|-----------------------|
| Depositions | Bello/9.83 Hours | 37 Hours |
| | Associate/12.5 Hours | 15 Hours |
| Trial Prep. | Unspecified/104.5 Hours | 124 Hours |

Mr. Bello actually reports 9.83 hours for depositions. The Port Authority, however, has consented to the fact that Mr. Bello spent 25.6 hours. The Court finds 9.83 hours to be extremely low and likely a mistake in reporting; therefore pursuant to the Port Authority's stipulation, the hours charged for depositions will be noted as 25.6 hours. The hours charged for Mr. Bello's associate's work on depositions and for Mr. Bello's trial preparation will be 12.5 hours and 104.5 hours, respectively.[3]

## 2. Hourly Rates

■ Mr. Bello invoiced his client at a rate of $200 per hour. *See* Invoices Billed to Leonard Vernon by Thomas Bello, submitted to this Court on July 8, 2002. A rate of $200 per hour is well within the reasonable range for an attorney with Mr. Bello's experience. *See Marisol A. v. Giuliani,* 111 F.Supp.2d 381, 386–87 (S.D.N.Y.2000) (holding that $375 was a reasonable amount for a lead attorney and $350 was a reasonable amount for an attorney with 15 years experience or more); *Ward v. New York City Transit Auth.,* No. 97 Civ. 8550, 1999 WL 446025, at *10 (S.D.N.Y. June 28, 1999) (holding that $300 was a reasonable rate in a civil rights action). Surprisingly, however, in his submission to this Court, Mr. Bello requests

that an hourly rate of $250 be used in the lodestar calculation. Though $250 per hour also would be a reasonable rate, Mr. Bello only charged his client a rate of $200 per hour, and the Court finds that it would be inappropriate for an attorney to seek from an adversary a greater sum than what would have been charged to his client. *Cf. Hensley v. Eckerhart,* 461 U.S. at 434, 103 S.Ct. 1933 (holding that hours charged to one's adversary must not exceed what would have been charged to the client). Accordingly, the $200 hourly rate will be used to determine attorney's fees, because that is the rate at which Mr. Bello invoiced his client.

■ Within the context of these considerations, the Court finds that the rate of $175 that Mr. Bello charges for his associate's work is relatively high. *See Lawson ex rel. Torres v. City of New York,* No. 99 Civ. 10393, 2000 WL 1617014, at *4 (S.D.N.Y. Oct. 27, 2000) (awarding a rate of $135 per hour, after determining that the rate for associates in the Southern District of New York is $105–$180). Other courts in the Southern District have awarded $125–$150 for associates depending on their experience level. *See Ward,* 1999 WL 446025, at *10; *Williams v. New York City Hous. Auth.,* 975 F.Supp. 317, 323 (S.D.N.Y.1997). Accordingly, the associate's billable rate is reduced to $150 per hour. In addition, Mr. Bello has charged $75 per hour for paralegal work. Courts in the Southern District have determined that the rate of $75 per hour for a paralegal is reasonable, and therefore the Court need not adjust the submission. *See, e.g., Marisol A.,* 111 F.Supp.2d at 388.

## 3. The Lodestar Calculation

---

**2.** The Port Authority does not challenge the hours submitted in conjunction with letters, phone calls, Work Product/Services rendered, conferences, or meetings with the client.

**3.** The Port Authority calculates the same discrepancies as the Court.

### Chart of Time to Hours Used in the Lodestar Calculation

| Matter | Who/Hours | Rate |
|---|---|---|
| Depositions | Bello/25.6 | $200 |
| | Associate/12.5 | $150 |
| Trial Prep. | Bello/104.5 Hours | $200 |
| Letters | Bello/15.5 | $200 |
| | Associate/.25 | $150 |
| | CMR(Paralegal)/4.25 | $75 |
| Phone Conversations | Bello/11 Hours | $200 |
| | CMR/.25 Hours | $75 |
| Work Prod./Services Rendered | Bello/34.25 | $200 |
| | Associate/2 | $150 |
| | CMR/1.50 | $75 |
| Conferences | Bello/10.5 | $200 |
| Meetings w. Client | Bello/3.5 | $200 |

In accordance with the above figures, the lodestar calculation renders attorney's fees in the grand total of $43,632.50.

### 4. Adjustments

 In addition to his submission for attorney's fees, Mr. Bello seeks "an additional enhancement pursuant to the Federal Rules in the sum of twenty-five percent of the total legal services." Letter of June 21.[4] After careful consideration of this case, the Court finds that neither an upward adjustment nor a downward adjustment seems appropriate. As the Supreme Court noted in *Blum*, the difficulty of the issue and the skill required to undertake such a case is likely already incorporated into the billable hours and billable rate set forth by Mr. Bello.[5] *See* 465 U.S. at 898, 104 S.Ct. 1541. Further, the instant situation cannot be categorized as one of the rare exceptions to the foregoing rule. *See id.* In addition, a downward adjustment because Vernon did not succeed on all of his claims does not seem in order. Like most employment discrimination cases, this case was brought on several different grounds seemingly "inextricably intertwined" with each other. *Reed*, 95 F.3d at 1183 (quoting *Dominic v. Consolidated*

4. Mr. Bello references an unspecified Federal Rule for this proposition. Presumably, Mr. Bello refers to the Federal Tort Claims Act. However, that statute has no bearing on this case.

5. The Court is not persuaded by Mr. Bello's argument that his attorney's fees should be enhanced because he was "unable to accept any new cases" during the trial. Affirmation of Thomas F. Bello, Esq., dated August 2, 2002 ("Bello Aff."), at 3. The trial lasted only two weeks, and any such potential award would be speculative in nature.

*Edison Co.*, 822 F.2d 1249, 1259 (2d Cir. 1987)). Therefore, no downward adjustment shall be made.

### 5. Costs

In addition to the previously discussed fees, Mr. Bello submits a list of costs. The list includes parking fees, subway fees, copying fees, fees for court transcripts, postage, fees for the court reporters, service fees, additional paralegal cost, and fees for picking up a transcript. *See* Letter of June 21 and exhibits attached thereto. Each of these items constitutes a compensable cost. However, the inclusion of a "preparation for next day-restaurant charge" of $36.80 is not compensable because this cost could have been avoided by simply preparing at the office. *See In re Towers Fin. Corp. Noteholders Litig.*, No. 93 Civ. 0810, 1997 WL 5904, at *1 n. 2 (S.D.N.Y. Jan. 8, 1997) (holding that including a restaurant charge as a cost was excessive); *Bulkmatic Transport Co., Inc. v. Pappas*, No. 99 Civ. 12070, 2002 WL 975625, at *3 (S.D.N.Y. May 9, 2002) (holding that reimbursement for a restaurant charge created a windfall because meals are everyday expenditures). Further, Mr. Bello includes a charge of $43.13 for "Avery legal dividers" which fall under either the category of overhead costs or supplies, neither of which is compensable. *See LeBlanc–Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir.1998) (holding ordinary overhead is not recoverable); *see also Meacham v. Knolls Atomic Power Lab.*, 185 F.Supp.2d 193, 243 (N.D.N.Y. Feb. 13,

2002) (holding cost of supplies, such as exhibit tabs and binders, is not recoverable). Accordingly, Mr. Bello is awarded all the costs he has submitted, with the exception of the $36.80 for dinner and the $43.15 for the legal dividers. The total for costs is $2,261.38.

## II. Compensatory Damage Award

The jury awarded $1.5 million in compensatory damages to Vernon for the Port Authority's aforementioned violations. The Second Circuit has held that compensatory damages are not available under the ADEA. *See, e.g., Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 147 (2d Cir.1984) (affirming district court's dismissal of compensatory damages under ADEA because "affording victims of discrimination the opportunity to obtain such relief would deter them from fully participating in the ADEA's administrative conciliation scheme."); *Grandison v. United States Postal Serv.*, 696 F.Supp. 891, 896 (S.D.N.Y.1988) (holding that compensatory damages are unavailable under the ADEA). Therefore, because the ADEA does not allow for compensatory damages, the entire award must be attributed to the violations arising under Title VII.

The Port Authority correctly identifies the statutory limit placed on compensatory and punitive damages awards under Title VII.[6] *See* Port Authority Letter at 4. The compensatory damage limits are tied to the number of employees that are employed by the defendant.[7] The

---

**6.** Pursuant to this Court's August 7, 2001 Opinion and Order granting in part and denying in part defendant's summary judgment motion, plaintiff's claim for punitive damages was stricken because the Port Authority, as a government entity, is immune from punitive damages. *See Vernon v. Port Authority of New York and New Jersey*, 154 F.Supp.2d 844, 860 (S.D.N.Y.2001).

**7.** For defendants with more than fourteen and fewer than 101 employees, the statute caps the aggregate at $50,000; for defendants with more than 100 and fewer than 201 employees, at $100,000; for defendants with more than 200 and fewer than 501 employees, at $200,000; and for defendants with more than 500 employees (like the Port Authority), at $300,000. *See* 42 U.S.C. § 1981a(b)(3)(A)-(D).

Port Authority employs over 500 people and therefore is subject to the maximum penalty under the guidelines set forth by 42 U.S.C.1981a. Thus, pursuant to this statutory directive, the $1.5 million compensatory damage award must be adjusted downward to meet the $300,000 maximum. *See Muller v. Costello,* 187 F.3d 298, 306–07 (2d Cir.1999) (capping a compensatory damage award of $420,300 at $300,000); *Shapiro v. AOE/Ricoh, Inc.,* No. 96 Civ. 2058, 1997 WL 107641, at *1 (S.D.N.Y. Mar. 11, 1997) (capping a $3 million award at $300,000).

██ ▪ Vernon asserts a convoluted argument to support his theory that the statutory cap is not applicable to the instant action. *See* Affirmation of Thomas F. Bello Esq., dated August 2, 2002 ("Bello Aff."), at 2. Relying on a Ninth Circuit decision, Vernon argues that awards issued under 42 U.S.C. § 1981 are not subject to the statutory cap and that "Section 1981a does not force a plaintiff to choose between Title VII and Section 1981 remedies." *Id.* (citing *Pavon v. Swift Trans. Co.,* 192 F.3d 902, 910 (9th Cir.1999)). The Court does not disagree with either assertion, but finds the two arguments are inapposite to this case because Vernon failed to include in his complaint a cause of action under 42 U.S.C. § 1981. It is unclear whether Vernon is attempting to analogize

Title VII claims and Section 1981 claims because the standards for relief are identical. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). It is well established, however, that the claims are "separate, distinct, and independent." *Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). Thus, in order to be granted relief under Section 1981, and possibly to avoid the statutory cap set forth for Title VII claims, a plaintiff must allege discrimination under Section 1981 in his complaint. Because plaintiff failed to allege discrimination under Section 1981 in his complaint, the entire award resulted from violations arising under Title VII, and therefore the award is subject to the statutory caps set forth by 42 U.S.C. § 1981a.[8] Accordingly, the Port Authority must pay Vernon $300,000 in compensatory damages.

**III. Additional Monies Owed to Vernon**

The Court has reviewed both parties' submissions regarding back pay and front pay and finds that although there is a large discrepancy in the results of the two reports, the plaintiff's economic report is more compelling.[9] This is due in large part because of the woefully inadequate submission prepared by the Port Authority and the continued failure to communicate

---

**8.** In its post-judgment submissions, the Port Authority may argue that remittitur is appropriate in the instant action. Remittitur is applicable when the "award is so high as to shock the judicial conscience and constitute a denial of justice." *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 165 (2d Cir.1998). The Court preliminarily finds at this point, without yet the benefit of defendant's likely post-judgment argument addressing the issue, that the jury's reduced award of $300,000 does not shock the conscience and is an appropriate amount of compensation in this action.

**9.** The Port Authority asks the Court to disregard Vernon's expert report in its entirety

because "the parties stipulated to allow the Port Authority to calculate back pay" and argues that had Vernon wished to retain his own expert, he should have elected to do so before trial "whereby the Port Authority would have had the opportunity to rebut his presumptions during trial." Port Authority Letter at 3. The Court strongly disagrees. Both parties stipulated on the record that the Court would make the final determination of back pay and the record does not reflect that Vernon specifically agreed that the Port Authority alone would calculate the back pay figure submitted to the Court. *See* Tr. 1039–40.

between both parties.[10] The memorandum and supporting affidavit and exhibits included with the Port Authority's response neither aided the Court in its determination of back pay, nor explained adequately the Port Authority's contentions.[11] The plaintiff's economic report relies on several documents, including tax returns, social security statements, and questionnaires submitted to the Port Authority. Moreover, the economic report is both detailed and clear as to the monies Vernon is owed by the Port Authority.

## A. Back Pay

### 1. Applicable Law

 A plaintiff successful in a suit arising under either Title VII or the ADEA is generally entitled to an award of back pay. *See Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 695 (2d Cir.1998) (holding back pay may be awarded under Title VII); *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 167 (2d Cir.1998) (holding back pay is an available remedy under the ADEA). An award of back pay does not fall into the category of compensatory damages, and therefore is not subject to the statutory cap that Title VII imposes. *See Zimmermann v. Associates First Capital Corp.*,

251 F.3d 376, 380 (2d Cir.2001) (Newman, J.) (affirming an award in excess of the statutory cap because a portion was comprised of back pay); *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir.2001) (holding that plaintiffs are entitled to seek equitable relief in the form of back pay in addition to compensatory damages). The Second Circuit has determined that under the ADEA back pay is a form of liquidated damages and is therefore an issue of fact to be decided by the jury, *see Dominic v. Consolidated Edison Co.*, 822 F.2d 1249, 1257–58 (2d Cir. 1987), while under Title VII back pay is considered to be an equitable award determined by the judge. *See Robinson*, 267 F.3d at 160. The plaintiff is entitled to such payments accruing between the time of the violation and the entry of judgment. *See Kirsch*, 148 F.3d at 167. Because the actual entry of judgment may be uncertain, the Court may need to update the award of back pay by a pro rata increase of the award. *See Banks v. Travelers Cos.*, 180 F.3d 358, 364 (2d Cir.1999).

 There are, however, exceptions to the general rule that back pay is awarded after a violation of Title VII or the ADEA. An employee discharged under Ti-

---

**10.** Indeed, the lack of routine courtesies shown by both attorneys throughout the history of this case continues to amaze and frustrate the Court. Countless times the Court has been forced to track down plaintiff's attorney, Mr. Bello, long after due dates, in order to ensure that the Port Authority is served with Vernon's moving papers and exhibits. Moreover, the Court has had to step in when Mr. Bello failed for over a month to keep his promise to turn over Vernon's tax returns and other evidence of his salary while at the Port Authority. In addition, Mr. Bello has claimed that the Port Authority's counsel, Megan Lee, Esq., has failed to return his phone calls. The way in which counsel have handled the post-trial submissions is disappointing. There is no benefit to either party in allowing this already protracted case to

languish, nor should the Court continually need to have faced such contumacious behavior.

**11.** This is particularly disappointing given the length of time both parties had to prepare these submissions. Perhaps the Port Authority declined adequately to support its backpay figure because it felt that it will more fully attack the award after this judgment is rendered. The Court notes its consternation with this strategy as the Court has been burdened needlessly in wading through tax returns and confusing charts in an effort to decipher the Port Authority's contentions. If the Port Authority intends to make a post-judgment motion to oppose the Court's determination of back pay, it is well advised to support its arguments more comprehensively.

tle VII or the ADEA must take reasonable measures to mitigate their losses. *See Hawkins,* 163 F.3d at 695. Plaintiffs are thus required to seek out and accept other suitable employment. *See id.* Another exception may occur if an employer chooses to submit after-acquired evidence of wrong-doing on the plaintiff's part to reduce the damages. *See McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 362–63, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). This evidence will reduce the damages only if the employer can show that the plaintiff would have been fired "on those grounds alone if the employer had known of it at the time of discharge." *Id.*

## 2. Application

■■■ The jury in this case indicated that Vernon is entitled to back pay, however, because the jury did not find a violation of the ADEA, and moreover, due to a stipulation by the parties, the Court will determine the precise amount of the back pay rather than the jury. In the instant action two different instances of discrimination and retaliation occurred: the first took place in January 1995 when Vernon's PPR was downgraded, and the second occurred in March 1995 when the Port Authority declined to promote Vernon to a B–95 position. Back pay should be calculated according to the failure to promote in March 1995 because this violation directly affected Vernon's salary. *See Greenbaum v. Handelsbanken,* 67 F.Supp.2d 228, 270 (S.D.N.Y.1999) (holding that the back pay period should reflect what the person would have earned if not for the discrimination); *cf. Banks,* 180 F.3d at 364 (holding back pay is an award that should commence at the time of discharge from employment). Vernon's economist correctly used this date as a starting point for the calculations. *See* Economic Report at 2. Vernon's economist has calculated the back pay period as ending on June 30, 2002. *See id.* at 3. Therefore, the Court has adjusted the back pay award to incorporate the time between June 30, 2002, and the date of the judgment.

■■■ Vernon's award is not further reduced or eliminated due to the exceptions described previously. Vernon remained an employee of the Port Authority, and therefore successfully mitigated the damages. Because Vernon's request for back pay incorporates the principal of mitigation by calculating his award as the difference between his current salary and the salary he would have earned had he been promoted, the damages he seeks do not need to be reduced any further. Moreover, the Port Authority provides no evidence of any wrong-doing by Vernon, thus the award shall not be reduced on this ground.

## B. Prejudgment Interest

## 1. Applicable Law

■■■ It is well settled that it is within this Court's discretion to award prejudgment interest on plaintiff's back pay damages. *See Endico Potatoes, Inc. v. CIT Group/Factoring, Inc.,* 67 F.3d 1063, 1071–72 (2d Cir.1995) ("The decision whether to grant prejudgment interest and the rate used if such interest is granted are matters confided to the district court's broad discretion, and will not be overturned on appeal absent an abuse of that discretion.") (internal quotations omitted). Such an award is necessary to make the plaintiff whole. Indeed, the Supreme Court has noted that prejudgment interest on back pay awards "of course, is an 'element of complete compensation.'" *Loeffler v. Frank,* 486 U.S. 549, 558, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) (quoting *West Virginia v. United States,* 479 U.S. 305, 310, 107 S.Ct. 702, 93 L.Ed.2d 639 (1987)). Moreover, prejudgment interest serves the purpose of discouraging an employer from attempting to "enjoy an interest-free loan for as long as [it can] delay paying out

back wages." *Clarke v. Frank*, 960 F.2d 1146, 1153–54 (2d Cir.1992).

■ The rate at which the prejudgment interest is calculated is within the Court's discretion, *see Endico Potatoes*, 67 F.3d at 1071, however, courts traditionally have used the treasury rate, which "adequately ensures that the plaintiff is sufficiently, but not overly, compensated." *McIntosh v. Irving Trust Co.*, 873 F.Supp. 872, 883 (S.D.N.Y.1995).

### 2. Application

■ Vernon's economist calculated the prejudgment interest using the rates of high-grade municipal bonds maturing in 2005 and high-grade municipal bonds maturing in 7–12 years, with rates of 4.0% and 5.0% respectively. *See* Economic Report at 7–8. These rates seem fair in light of the fact that the average treasury rate between 1995 and 2001 was 5.45%. *See U.S. Census Bureau, Statistical Abstract of the United States: 2001*, No. 1195, "Bond Yields: 1980 to 2000" (121st ed.2001). Thus, it appears that Vernon's economist's calculations of prejudgment interest are reasonable. Accordingly, the Court holds that the Port Authority owes Vernon $117,550 in back pay.

### C. Front Pay

#### 1. Applicable Law

■ Front pay is an equitable remedy, available but not mandatory, under Title VII and the ADEA. *See Robinson*, 267 F.3d at 160 (holding that front pay is a remedy under Title VII); *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 727 (2d Cir.1984) (holding that front pay is a remedy under the ADEA). It is within the court's discretion to award front pay, reinstate the plaintiff's employment, or do nothing at all in regard to future employment. *See Banks*, 180 F.3d at 364 (holding that reinstatement may not be an option due to animosity between the parties or

availability of positions). Courts are encouraged to fashion a remedy that "ensure[s] the victims of age discrimination are made whole." *Whittlesey*, 742 F.2d at 727. The Second Circuit has held that front pay should be awarded in situations where it is unlikely that the plaintiff will be able to find a reasonably comparable employment in the future. *See Padilla v. Metro–North Commuter R.R.*, 92 F.3d 117, 125–26 (2d Cir.1996). Although a monetary determination is certain to be speculative in nature, the Second Circuit repeatedly has upheld awards of front pay, when reinstatement is not an option. *See, e.g., Whittlesey*, 742 F.2d at 728 (holding front pay was available to a plaintiff who only had four years to retirement because the time period was short and therefore did not lead to a great deal of speculation). Further, in calculating front pay the amount should be discounted to its present value. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1189 (2d Cir.1992). Lastly, front pay, like back pay, is not an element of compensatory damages, and therefore does not count toward Title VII's statutory cap. *See Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 848, 121 S.Ct. 1946, 150 L.Ed.2d 62 (2001).

#### 2. Application

■ The Port Authority argues that front pay is to be determined by the jury and that it is likely included within the compensatory damage award. *See* Port Authority Letter at 3–4. However, front pay is a remedy to be granted by the court, *see Whittlesey*, 742 F.2d at 727, and is distinct from an award of compensatory damages. *See Pollard*, 532 U.S. at 848, 121 S.Ct. 1946. Vernon is unlikely to be granted the B–95 position he was denied, particularly due to the animosity between the parties. *See Banks*, 180 F.3d at 364. Therefore, it seems prudent to the Court that Vernon should receive front pay in the

difference between Vernon's current salary and the salary he would have earned had he been promoted. Because Vernon is only a few years from the age of retirement the award is not overly speculative. Moreover, the calculations set forth by Vernon's economist have been discounted to their present value and therefore are an accurate measure of what Vernon is owed. Vernon is also seeking pension benefits that he would have accumulated due to his higher salary. This is also necessary to make Vernon "whole." *See Sharkey v. Lasmo (AUL Ltd.).*, 214 F.3d 371, 375 (2d Cir.2000). "If [plaintiff] [is] denied compensation for lost pension benefits, he [has not been] made whole, and thus [has] not receive[d] the proper measure of relief under the anti-discrimination laws." *Id.* Thus, Vernon is entitled to the pension credits as set forth by his economist. Accordingly, the Port Authority owes Vernon $118,540.[12]

## Conclusion

Therefore, based upon the foregoing reasoning, it is hereby ORDERED that Vernon shall be awarded the aforementioned damages and the Clerk of the Court is directed to enter judgment for the plaintiff accordingly: (1) attorney's fees of $43,632.50 and costs of $2,261.38; (2) compensatory damages of $300,000; (3) back pay including prejudgment interest in the sum of $117,550; and (4) front pay in the sum of $118,540.

**SO ORDERED.**

12. In order to avoid a potential windfall, the Court has calculated the front pay award as ceasing when the plaintiff is first eligible for retirement at the age of 62, rather than at the Social Security full retirement age of 65.8.